## STATE ex rel. RICHARDS, Appellants, v. WHISMAN, County Auditor, Respondent.

### (154 N. W. 707.)

(File No. 3883.   Opinion filed November 4, 1915.   Rehearing denied.)

1. **Constitutional Law—Legislative Enactment—Emergency Clause, Effect Upon Operation of Act—Primary Election Laws—Enjoining Execution of Laws—Want of Referendum Petition, Effect on Relator's Rights.**

   In a suit by relators to enjoin county auditor from complying with requirements of Laws 1915, Ch. 258, being a general primary election law, which law in many particulars inherently conflicts with Laws 1911, Ch. 201, known as the "Richards Primary Law," relators contending that the 1915 law is unconstitutional in containing an emergency clause making it effectual immediately, thereby depriving the people of the reserved right of having the law submitted to the voters, **held,** that every law within the legislative power to enact, and where no emergency clause is attached, goes into effect on the next succeeding 1st day of July, unless vetoed by the Governor, or unless a referendum petition referring same to vote of the people is legally filed.   And, assuming, without deciding, that the emergency clause to said Ch. 258 was void, then the chapter is, in legal effect, the same as if no emergency clause was contained therein, it not having been vetoed.   **Held,** further, that no provision in the Constitution permits or authorizes exercise of the referendum vote in absence of filing of a proper petition therefor; and, no such petition having been filed requiring a vote on said Ch. 258, relators are not in a position to complain of said law's invalidity on account of such emergency clause.

2. **Statutes—Time of Taking Effect—Commencement of Suit to Test Statute, Effect of, on Operation of Enactment—Unwarranted Emergency Clause, Effect Upon Filing of Referendum Petition—Validity of Enactment—Moot Question.**

   The mere commencement of a suit to test constitutionality of an enactment, either with or without the emergency clause, will not prevent the enactment from taking effect at the legally specified time.   **Held,** further, that the attachment of an unwarranted and void emergency clause to an enactment will

not prevent filing of a proper referendum petition; and in order to have kept alive the question of validity of the emergency clause in Laws 1915, Ch. 258, as a question for judicial determination, a proper referendum petition should have been filed prior to July 1st last; therefore, if the Legislature had power to repeal Laws 1911, Ch. 201, and enact in lieu thereof Laws 1915, Ch. 258, (each being a general primary law) then Ch. 258 was a valid and existing law, whether it became such with or without an emergency clause; hence, there having been no such petition filed, the question of unconstitutionality of Ch. 258, on the ground of its having been enacted without a referendum vote of the people, and of its being in conflict with said Ch. 201, which was a referended enactment, is now merely a moot question.

3.   Statutes—Legislative Power, Its Limitations—Constitutions—Conditions Precedent to Restraining Execution of Statute.

The Legislature has absolute power to enact or pass, amend, or repeal, any law whatsoever, unless prohibited by the state or federal Constitution; and courts can only restrain execution of a statute when it conflicts with one of said Constitutions. The constitutional inhibition may be either express or implied; that is, the Constitution may expressly prohibit a specified act of the Legislature, or by its inherent terms may of necessity prohibit certain legislative acts by reason of inherent conflict arising between the terms of the Constitution and the claimed legislative power.

4.   Constitutional Law—Referendum—Legislative Power—Legislative Repeal of Referended Enactment—Relations of Legislature to People—Non-conflicting Rights—Purpose of Referendum—Compelling Power of People—Constitutional Amendment by Initiative—Referendum Prohibited, When—Emergency Clause, How Limited.

Const., Art. 3, Sec. 1, as it originally existed, declared that the legislative power shall be vested in the Legislature, which was a grant of general plenary power conferred by the people upon the Legislature to enact, amend, or repeal any statute law, excepting only where prohibited by such Constitution itself, or by the federal Constitution. Thereafter it was amended to provide that the legislative power shall be vested in the Legislature, except that the people expressly reserve to themselves the right to propose measures, which measures the Legislature shall enact and submit to a vote of the electors, and, to require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors before going into effect, except laws necessary for immediate preservation of the public peace, health or safety, support of the state government and

its existing institutions. The section further provided that it shall not be construed to deprive the Legislature or any member thereof of the right to propose any measure, and that the veto power shall not be exercised as to measures referred to vote of the people. The primary election law, known as the "Richards Primary Law," (Laws 1911, Ch. 201) was passed under the initiative and referendum. **Held,** that nothing contained in said constitutional amendment either expressly or impliedly, in any degree, conflicts with, inhibits, limits, abridges, or prohibits any part of the legislative power originally granted to it to enact, amend, or repeal any law it might have enacted before adoption of the amendment; that the fact that the people themselves may propose or enact laws in connection with the Legislature in no manner conflicts with or prohibits the Legislature from itself also enacting the same law that might be desired by the people, in which event the initiative would then become unnecessary and useless as to such law; that the evident purpose of said constitutional amendment was, not to curtail or limit the legislative power to enact laws, but to compel enactment by the Legislature of measures desired by the people, and, if the Legislature neglected to act as so desired, that then the people, through the initiative, might themselves enact such measures into laws; that, recognizing the legislative right to enact laws at pleasure, within its constitutional powers, the referendum was designed as a check upon all legislative enactments not favored by the people; and that the only prohibition, or inhibition, or limitation relative to legislative power, appearing in the initiative portion of the amendment, is that which provides that the veto power of the executive shall not be exercised as to measures referred to a vote of the people. **Held,** further, that the Constitution cannot be amended, or nullified, by means of initiated legislative enactments; that said amendment was intended to preserve to the people a greater share of, and control over, the legislative power, but without taking away from any other constitutional department any of its powers, excepting the veto power of the state executive. **Held,** further, that where the Legislature enacts a law amending or repealing an initiated law, such law may be submitted to referendum vote under the same conditions as those under which any and all laws which are subject to the constitutional referendum may be submitted to such vote, regardless of whether or not such amending or repealing act contains an emergency clause; in other words, all enactments by the Legislature which are subject to the referendum are not subject to the emergency clause, and, **vice versa,** enactments subject to emergency clause are not subject to referendum. **Held,** further,

that, as to laws concerning the public peace, health, or safety, and support of state government and its institutions, there can be no exercise of the referendum power, under any circumstances, with or without an emergency clause; and this regardless of the size of the majority vote by which they were passed; since, in construing Sec. 22 of said Art. 1, which in effect postpones the taking effect of an act until 90 days after adjournment of the session at which it was passed, unless in case of emergency the Legislature by two-thirds vote otherwise directs, said section and Sec. 1 should be construed and read together as if forming different parts of but one section; therefore the emergency measures mentioned in Sec. 22 refer only to the emergency measures mentioned in said referendum clause of said amendment to Sec. 1.   Therefore, held, further, that, by necessary implication, the Legislature is only authorized to declare emergencies in that class of measures specified in said exception to the referendum clause of the Constitution; that, as to emergency measures and acts within the purview of said exception, the Legislature may declare an emergency to exist, for the purpose and to the end that such enactment may go into effect at once, and such declaration and finding as to existence of such emergency is final, and not within the power or province of courts to question.   But that, as to any measure, law, or enactment clearly not within said class so specified, the Legislature is without power or authority to declare an emergency to exist in relation thereto, by any vote, however large; and legislative action embodying emergency clauses in measures not within said exception are unwarranted and void, and should, as to such emergency clause, be held void by the courts.   Finally:   That the Legislature had power to repeal Ch. 201, Laws 1911, and to enact in lieu thereof Laws 1915, Ch. 258.

5.   Statutes—Initiated Laws—Peoples' Vote Necessary to Approve— "Majority of All Votes Cast"—Constitutional and Statutory Provisions.

Neither under the Constitution, Art. 3, Sec. 1, relating to the initiative and referendum, nor under Pol. Code, Sec. 22, concerning submission of a legislative enactment to people, and providing that if "a majority of all the votes cast both for and against the measure so enacted and submitted be for the measure" it shall then become a law, is it required that initiated laws shall receive more than a majority of all votes cast upon the measure submitted.

Appeal from Circuit Court, Beadle County.   Hon. ALVA E. TAYLOR, Judge.

Proceedings by the State, on the relation of R. O. Richards

and others, against M. D. Whisman, as County Auditor of Beadle County, to enjoin defendant from complying with provisions of the primary election law of 1915. From a judgment for defendant, and from an order denying a new trial, relators appeal. Affirmed.

*Gardner & Churchill,* and *Null & Royhl,* for Appellants.

*Clarence C. Caldwell,* Attorney General, *Byron S. Payne,* Assistant Attorney General, and *A. A. Chamberlain,* State's Attorney, for Respondents.

*W. A. Lynch,* as amicus curiae.

(1) Under point one of the opinion, Respondent submitted that: That the question of the authority of the Legislature to declare an emergency and place the 1915 act into immediate operation is not within the issues of this case nor material thereto. No petition was filed with the Secretary of State before July 1st to refer this act. McIntosh v. State, 56 Tex. Cr. 134, 120 S. W. 455.

(3) To point three of the opinion, Respondent cited: Art. 3, Sec. 1, Const.; In re Watson, 17 S. D. 482; State v. Summers, 144 N. W. 730, 50 L. R. A. (N. S.) 206.

(4) Under point four of the opinion, Appellants submitted that: The people, being the principal, have granted legislative power to the Legislature and "expressly reserved" certain legislative powers to themselves; and cited: Cooley Const. Lim. p. 120. That, if the Legislature could repeal a referended enactment, and if then the people could, through the referendum, veto the law adopted by the Legislature, etc., the result would be little short of anarchy; there would be failure of legislation on the particular subject. Such was not the intention of the constitutional amendment. Ex parte Anderson, 134 Cal. 69, 66 Pac. 194; Stetson v. City of Seattle, 134 Pac. 494. That neither the right to enact any measure nor the right of the member to introduce any measure is mentioned in the Constitution; it preserves to the Legislature and the members thereof only the right to propose any measure. That where the Constitution says: "Shall not be construed so as to deprive the Legislature or any member thereof of the right to propose any measure," it means that the Legislature shall not be deprived of the right to propose legislation to be submitted to the people. Also, Art. 23, Const. That as Sec. 1, article 3, declares in positive terms that any laws shall be submitted to a vote of the electors ex-

cept "such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions," therefore, to add to this exception, as was done in Lavin v Bacon, 14 S. D. 394 (decided before the adoption of the initiative and referendum)' all laws passed with an emergency clause, will entirely defeat the reserve power of the people to submit the laws to the electors of the state.   State v. Meath, (Wash.) 147 Pac. 11.   That when the Legislature passed the repealing act and added the emergency clause thereto, it did an unconstitutional act.   A law enacted by the people of the state cannot be repealed by the Legislature.   State v. Hastings, 12 Wis. 47; Steinwick v. Sacket, 17 Wis. 646; Brauer v. Hade, 18 Wis. 102; Rusk v. Van Nostrand, 21 Wis. 159; Porter v. State, 46 Wis. 345.   The power to govern rests primarily in the people, and not in the Legislature.   Elliott's Debates, Vol. 5, p. 352.   Attorney General v. Lindley, (Mich.) 145 N. W. 98.   By amendment of their Constitution, the people reserve the power of direct legislation and of direct veto.   Const., Art. 3, Sec. 1.

Respondent submitted that:   The Legislature has declared an emergency in the 1915 act, and there is no appeal to the courts therefrom.   State ex rel Lavin v. Bacon, 14 S. D. 394.   That under Sec. 22, Art. 3, the Legislature may declare an emergency other than is provided for in section 1 of this article.   State ex rel Lavin v. Bacon, supra.   The Legislature had power to pass the 1915 primary election law and thus repeal the Richards primary law.   Const., Art. 3, Sec. 1.   Re Senate Resolution( Colo.) 130 Pac. 333; People v. Prevost, (Colo.) 134 Pac. 129; State v. Roach, (Mo.) 130 S. W. 689; Hall v. Dunn, 97 Pac. 811; Waugh v. Gloss 246 Ill. 604, 92 N. E. 974; Kadderly v. City of Portland, 44 Ore. 118, 74 Pac. 710; State v. Schleuer, 115 Pac. 1057; Straw v. Harris, 103 Pac. 780.   That the Constitution cannot be amended through the initiative and referendum.   People v. Prevost, 134 Pac. 130; Ellingham v. Dye, 99 N. E. 18; Const., Art. 23.

(5) To point five of the opinion, W. A. Lynch, Esq., as amicus curiae, cited:   Const., Art. 3, Sec. 1; Williamson v. Aldrich, 21 S. D. 13; State ex rel. Clark v. Stakke, 22 S. D. 228; Southerland v. Goldsboro, 96 N. C., 1 S. E. 760; People v. Chapman, 66 Ill. 137; State ex rel. vs. Harris, 96 Mo., 298 S. W. 794; In re Denny, 59 N. E. 359, 51 L. R. A. 722.

McCOY, P. J. This suit was instituted by plaintiffs, R. O. Richards and others, to restrain defendant, as county auditor of Beadle county, from complying with the requirements of chapter 258, Laws of 1915, upon the ground that said legislative enactment is unconstitutional and void: (1) In that it contains an emergency clause making it take immediate effect, thereby, as it is alleged "depriving the people of the expressly reserved right of having the law submitted to the voters"; (2) in that the Legislature was without the power to repeal chapter 201, Laws of 1911, commonly known as the "Richards Primary Law," the same, as it is alleged, "being a law enacted by a direct vote of the people under the initiative and referendum." Findings and judgment were in favor of defendant, and plaintiffs appeal.

[1] At the 1915 session of the Legislature there was passed and enacted, with an emergency clause, chapter 258; the same being a general primary election law. In many material particulars, although not in all, this chapter 258 inherently conflicts with certain provisions of chapter 201, Laws of 1911. By the express provision of chapter 258, chapter 201 and all acts and parts of acts in conflict with chapter 258 were repealed. We will first consider the question of the emergency clause contained in chapter 258, as we view it in connection with the record in this case. Every law which the Legislature has power to enact, where there is no emergency clause embodied therein, goes into effect on the next succeeding 1st day of July, unless vetoed by the Governor, or unless a referendum petition referring the same to a vote is filed as required by law. If, as contended by appellants, the emergency clause to chapter 258 was void and of no effect (a question not necessary to be decided in this case under the record herein), then the said chapter 258 is, in legal effect, the same as if no emergency was therein contained. Chapter 258 was not vetoed by the Governor, and it stands as one of the conceded facts in this case that no referendum petition of any kind was ever filed requiring chapter 258 to be submitted to a vote of the people for approval. There is no provision in the Constitution that will permit or authorize the exercise of the referendum vote in the absence of the filing of a proper petition therefor. Not having filed a proper referendum petition requiring a vote on said chapter 258, the plaintiffs are not in a position to complain of the invalidity of chapter 258

on account of the emergency clause therein contained.   The mere fact that this suit was commenced before July 1st will not change the situation.   The only thing that will prevent such an enactment, if otherwise valid, from going into effect on the 1st day of July, is the exercise of the veto or the referendum.

[2] The mere commencement of a suit to determine the constitutionality of an enactment, either with or without the emergency clause, will not prevent such an enactment from going into effect at the legally specified time; otherwise many salutary laws might be in this manner idefinitely postponed from going into effect at the times specified by the Constitution, and thereby placing in the hands of litigants and courts the power of regulating or varying the time fixed by the Constitution in which legislative acts shall go into effect.   The attachment of an unwarranted and void emergency clause to an enactment could in no manner prevent the filing of a proper referendum petition.   In order to have kept alive the question of the validity of the emergency clause contained in chapter 258, as a question for determination in this court, or the court below, a proper referendum petition should have been filed prior to the 1st day of July last.   Therefore, if the Legislature had the power to repeal chapter 201, and enact in place thereof chapter 258, then on and after the 1st day of July, 1915, chapter 258 was a valid and existing law of this state, whether the same became such with or without an emergency clause.   In Riley v. Carico, 27 Okla. 33, 110 Pac. 738, and in McIntosh v. State, 56 Tex. Cr. R. 134, 120 S. W. 455, it is held that the fact that the action of the Legislature in declaring an emergency to exist was void did not invalidate the act or relieve the necessity of filing a referendum petition, but resulted in the act taking effect 90 days after the adjournment of the Legislature.   It is therefore clear that the first ground of unconstitutionality of chapter 258 urged by appellants is now merely a moot question.   3 Corpus Juris, pp. 358-360.

[3] As we view the record in this case, there is but one question before this court for determination, and that is:   Had the Legislature power to repeal chapter 201 of 1911, and enact in place thereof the general primary law embodied in chapter 258, Laws of 1915?   No rule of law is better settled throughout the United States than that a state Legislature has absolute power to enact, that is, pass, amend, or repeal, any law whatsoever it pleases,

unless it is prohibited from so doing by either the state or federal Constitutions; that the courts can only restrain the execution of a statute when it conflicts with either one or the other of said Constitutions. In determining the constitutionality of a statute, as is well said in one of the cited cases, we peruse the statute, then·examine the Constitution, and ascertain if this instrument says, "Thou shalt not," and, if we find no inhibition, then the statute is the law. The inhibition of a Constitution may be either express or implied; that is, the Constitution may expressly prohibit any specified act of the Legislature, or the Canstitution by its inherent terms may of necessity prohibit certain acts of a Legislature by reason of the inherent conflict that would arise between the terms of the Constitution and the power claimed in favor of the Legislature. Cooley's Const. Lim. pp. 126, 236, 245, 252, 255; 36 Cyc. 944; Chamberlain v. Wood, 15 S. D. 216, 88 N. W. 109, 56 L. R. A. 187, 91 Am .St. Rep. 674; Bon Homme County v. Berndt, 15 S. D. 494, 90 N. W. 147; Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; Commonwealth v. Reeder, 171 Pa. 505, 33 Atl. 67, 33 L. R. A. 141.

[4, 5] With these rules in view we will examine the question presented. Section 1, art. 3, State Constitution, as it originally exists, read as follows:

"The legislative power shall be vested in a Legislature which shall consist of a Senate and House of Representatives."

That was a grant of general plenary power conferred upon the Legislature by the people to enact, amend, or repeal any statute law, excepting only in those instances where prohibited by such Constitution itself, or by the federal Constitution. In 1898 said section 1, art. 3, was amended to read as follows:

"The legislative power [of the state] shall be vested in a Legislature which shall consist of a Senate and House of Representatives, except that the people expressly reserve to themselves the right to propose measures, which measures the Legislature shall enact and submit to a vote of the electors of the state, and also the right to require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect (except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its·existing public institutions): Provided, that not more than five per centum of the

qualified electors of the state shall be required to invoke either the initiative or the referendum.

"This section shall not be construed so as to deprive the Legislature or any member thereof of the right to propose any measure. The veto power of the executive shall not be exercised as to measures referred to a vote of the people. This section shall apply to municipalities. The enacting clause of all laws approved by a vote of the electors of the state shall be: 'Be it enacted by the people of South Dakota.' The Legislature shall make suitable provisions for carrying into effect the provisions of this section."

As we view this constitutional amendment, there is nothing therein contained which, either expressly or impliedly, in any degree, conflicts with, inhibits, limits, abridges, or prohibts any part of the legislative power originally granted to it to enact, amend, or repeal any law which it might have enacted before the adoption of this amendment. The fact that the people themselves may propose or enact laws in connection with the Legislature in no manner conflicts with or prohibits the Legislature from itself also enacting the same law that might be desired by the people. If the Legislature of its own volition should enact the same law desired by the people, the initiative would then become unnecessary and useless as to such law. The evident purpose of this constitutional amendment was not to curtail or limit the powers of the Legislature to enact laws, but the purpose was to compel enactment by the Legislature of measures desired by the people, and, if the Legislature neglected to act as so desired by the people, that then the people by means of the initiative might enact such measures into laws themselves. And, recognizing the right of the Legislature to enact laws as it pleased, within all its constitutional powers, the referendum was designed as a check upon all legislative enactments not favored by the people. The only prohibition or inhibition or limitation in relation to legislative power appearing in the initiative portion of the amendment is that which relates to the veto power, and which reads:

"The veto power of the executive shall not be exercised as to measures referred to a vote of the people."

If the framers of this constitutional amendment had placed therein language something like the following: "No Legislature shall have power to repeal any initiative measure referred to a

vote of the people"—then the Constitution would have expressly prohibited the Legislature from amending or repealing initiated laws; or, if they had placed something like this in the constitutional amendment: "Initiated laws can be amended or repealed only by a vote of the people"—then this constitutional amendment would, by necessary implication, have prohibited the Legislature from repealing initiated laws. But no such limitation of the legislative power appears in such amendment or elsewhere in the Constitution. Appellants are, in effect, now asking this court to read into the Constitution something that is not, either expressly or by implication therein. In some of our sister states the initiative and referendum constitutional amendment prohibts the repeal by the Legislature of initiated laws. Section 1, art. 2, Const. Wash., as amended in 1912, provides that:

"The veto power of the Governor shall not extend to measures initiated by or referred to the people."

And that:

"No. act, law, or bill approved by the people can be amended or repealed by the Legislature within a period of two years following such enactment."

Section 1, art. 4, of the California initiative and referendum constitutional amendment provides that measures initiated or adopted by the people are not subject to the veto power of the Governor; and no measure adopted by the people under the initiative can be amended or repealed except by a vote of the electors. By the Washington Constitution the Legislature is for a time expressly prohibited from amending or repealing any initiated law. While in the California Constitution the Legislature is not expressly mentioned, still the power of the Legislature to amend or repeal an initiated law submitted to the people is effectually prohibited by the inherent terms of such Constitution by necessary implication. In the states of Arkansas; Colorado, Missouri, Montana, Nebraska, Oklahoma, Oregon, Ohio, and some others, the initiative and referendum constitutional provisions are similar to that in this state, and contain a prohibition against the veto power of the state executive, but make no mention of any prohibition as against the power of the Legislature to amend or repeal initiated laws. Why the Constitution builders of Washington and California put such a prohibtion as to legislative repeal of initiated

laws in their state Constitutions, or why the Constitution builders
of this state, and all these others, left such prohibition out of
their Constitutions, is not for us to inquire.    It is enough for us
to know that it was left out of *our* Constitution.    It is a matter of
common knowledge that an ill-advised and burdensome law might
be placed upon our statute books by means of the initiative, as
well as by an enactment of the Legislature.    Such a law so placed
upon the statute by the initiative would almost invariably remain
a law at least four years, if the only method of repeal or amend-
ment was by means of the initiative and vote of the people.    It
may have been that a majority of those drafting and proposing
the initiative and referendum amendment to the Constitutions such
as exists in this state were of the view that four years was too
long a time to leave such an unwise law in force, and therefore
purposely and intentionally left the repealing power as to all in-
itiated laws in the hands of the Legislature.    It is not to be pre-
sumed that the Constitution builders of California and Washing-
ton possessed all the wisdom upon this subject, and that all the
Constitution makers in all these ten or a dozen other states blund-
ered by leaving the repealing power as to initiated laws in the
hands of the Legislature.    Even in the state of Washington, after
the lapse of two years, the Legislature is permitted to repeal an
initiated law, thus recognizing that for some reason the Legisla-
ture should have repealing power, and also recognizing that the
Legislature would have such repealing power unless so taken
away.    There are many suggestive reasons which might have
influenced the Constitution makers of this and other states in leav-
ing with the Legislature the power to repeal or amend an initiated
law.    If in the course of time we should have placed upon our
statutes various initiated laws upon various general subjects, such
as elections, banking, corporations, court procedure, assessment
and taxation, schools, public officers, and if the Legislature pos-
sessed no power to repeal or amend such initiated laws, then the
Legislature would be powerless to pass any law in conflict with
any part of such initiated laws.    A Constitution is to be tested not
by what has been or is being done thereunder, but by what may
be done under its authority.    Sterritt v. Young, 14 Wyo. 146, 82
Pac. 946, 4 L. R. A. (N. S.) 169, 116 Am. St. Rep. 994.    Un-
der such conditions the constitutional functions of the Legislature

would thereby become so handicapped, curtailed, and limited as to be of but little vlaue. We are of the view that the Constitution of the state cannot be so amended or nullified by means of initiated legislative enactments. We are of the view that the initiative and referendum amendment was never intended as a means of so curtailing and limiting the constitutional power of the state Legislature, but was intended to preserve to the people a greater share of, and control over, the legislative power, but without taking away from any other constitutional department any of its powers, excepting the veto power of the state executive. Kadderly v. Portland, 44 Or. 118, 74 Pac. 710, 75 Pac. 222; Straw v. Harris, 54 Or. 424, 103 Pac. 777; Kiernan v. Portland, 57 Or. 454, 111 Pac. 379, 112 Pac. 402, 37 L. R. A. (N. S.) 339; People v. Prevost, 55 Colo. 199, 134 Pac. 129; State v. Dist. Court, 50 Mont. 134, 145 Pac. 721. The Supreme Court of every state having an initiative and referendum constitutional provision similar to that of this state which has been called upon to determine the question has held that the Legislature has the power to repeal or amend an initiated law. The Supreme Court of the state of Oregon, in Kadderly v. Portland, 44 Or. 118, 74 Pac. 710, among other things, said:

"Now, the initiative and referendum amendment does not abolish or destroy the republican form of government, or substitute another in its place. The representative character of the government still remains. The people have simply reserved to themselves a larger share of legislative power, but they have not overthrown the republican form of the government, or substituted another in its place. The government is still divided into the legislative, executive, and judicial departments, the duties of which are discharged by representatives selected by the people. Under this amendment, it is true, the people may exercise a legislative power, and may, in effect, veto or defeat bills passed and approved by the Legislature and the Governor; but the legislative and executive departments are not destroyed, nor are their powers or authority materially curtailed. Laws proposed and enacted by the people under the initiative clause of the amendment are subject to the same constitutional limitations as other statutes, and may be amended or repealed by the Legislature at will."

To the same effect are the decisions of the Supreme Court of

Missouri and Colorado. State v. Roach, 230 Mo. 408, 130 S. W. 689, 139 Am. St. Rep. 639; In re Senate Resolution, 54 Colo. 262, 130 Pac. 333; People v. Prevost, supra. Also see note on initiative and referendum 50 L. R. A. (N. S.) p. 195.

It is urged by appellants that if the Legislature has the power to amend or repeal initiated laws, and that if the Legislature also has the power to prevent the operation of the referendum as to such an amending or repealing statute by passing the same by a two-thirds majority vote, with an emergency clause embodied therein, then the initiative and referendum amendment to the Constitution becomes a farce and of no practical utility. We are of the view that the premise from which this conclusion is drawn is untrue. This contention, with relation to such use by the Legislature of the emergency clause, requires us to further consider the emergency proposition in connection with appellants' second ground of alleged invalidity of said chapter 258. We are of the view that, where the Legislature enacts a law amending or repealing an initiated law, such law may be submitted to referendum vote under the same conditions as may be submitted to vote any and all laws which are the subject of constitutional referendum, and this wholly regardless of whether or not such amending or repealing act contains an emergency clause; in other words, all those enactments by the Legislature which are the subject of referendum are not subject to the emergency clause, and, vice versa, all those enactments which are subject to the emergency clause are not subject to the referendum. The only lawful function of the emergency clause is to cause an enactment to go into effect as soon as signed by the executive, instead of waiting until the first day of the next July. It must be observed that the initiative and referendum amendment to the Constitution provides that any laws which the Legislature may have enacted shall, upon a proper referendum petition being filed, be submitted to a vote of the electors of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health, or safety, support of the state government and its existing public institutions. Such laws comprehended within this exception, as their names and nature imply, are emergency measures. As to such emergency measures there can be no exercise

18—Vol. 36, S. D.

of the referendum power, under any circumstances, with or without an emergency clause, and this regardless of the size of the majority vote by which they were passed. Section 22, art. 3, provides that:

"No act shall take effect until ninety days after the adjournment of the session at which it was passed, unless in case of emergency (to be expressed in the preamble or body of the act) the Legislature by a vote of two-thirds of all the members elected to each house, otherwise direct."

Sections 1 and 22 of article 3 should be construed and read together as if forming different parts of but one section. State v. Bacon, 14 S. D. 394, 85 N. W. 605. The emergency measures mentioned in section 22 must and can only refer to the same emergency measures mentioned in the referendum clause exception contained in section 1. It therefore follows that the Legislature, by necessary implication, is only authorized to declare emergencies in that class of measures specified in the said exception to the referendum clause. As to all emergency measures and acts within the purview of this exception, the Legislature may declare an emergency to exist, for the purpose and to the end that such enactment may at once go into effect, and such declaration and finding as to the existence of such emergency is final, and not within the power or province of the courts to question. But as to any measure, law, or enactment clearly not within the class of emergency measures specified within said exception, the Legislature has no power or authority to declare an emergency to exist in relation thereto, by any vote, however large the same may be; and the action of the Legislature in embodying emergency clauses in measures clearly not comprehended within the said exception are wholly unwarranted and void, and should be so held by the courts. Not that the act itself would be void, but the emergency clause would be void, with the result that the act would not go into effect until the 1st day of the next July, and also with the result that, in the event of a proper referendum petition being filed as required by law, such enactment would not go into effect until approved by a majority vote of the electors of the state. Riley v. Carico, supra; McIntosh v. State, supra; Sears v. Multnomah Co., 49 Or. 42, 88 Pac. 522; McClure v. Nye, 22 Cal. App. 248, 133 Pac. 1145; State v. Meath (Wash.) 147 Pac. 11; Mugler v. Kan-

sas, 123 U. S. 623, 661, 8 Sup. Ct., 273, 297, 31 L. Ed. 205. In State v. Meath the court held that, as, under the Constitution of 1889, the courts had decided they were without authority to review the legislative discretion in declaring an emergency they should, after the adoption of the initiative and referendum amendment, scrutinize a legislative declaration of an emergency and declare the declaration void in case it is obviously false; for the spirit of a law and the mischief intended to be remedied must be considered. In Mugler v. Kansas it is held that:

"The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the Legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

Under this view the initiative and referendum is a workable and efficient law; that whenever the Legislature shall have passed an act repealing an initiated law, not comprehended within the emergency exception to the referendum clause, the same may be referred to a referendum vote the same as may any other law which is subject to the referendum. We are of the view that this was the clear intention of the framers of the initiative and referendum amendment to our Constitution as expressed by the plain terms thereof.

We therefore hold that the Legislature had the power to repeal chapter 201, Laws of 1911, and to enact in lieu thereof chapter 258; that the only relief the courts might have granted under any circumstances growing out of the enactment of chapter 258, for reasons hereinbefore stated, was to have ordered and required that the enactment or law known as chapter 258 be submitted to a referendum vote of the people, notwithstanding the emergency clause thereto annexed; but that cannot be granted, for the reason that the people have not invoked the referendum or put the same in operation as to said enactment by the filing of a referen-

dum petition signed by at least 5 per cent. of the electors of the state.

[6] This being a cause involving a matter of public concern, by written stipulation of counsel for both appellants and respondent, W. A. Lynch, Esq., attorney, as amicus curiæ, has filed a brief contending that chapter 201, Laws of 1911, never became a valid initiated law of this state, in that the same was not approved by a majority vote of all the electors of this state; but we are of the view that this contention is not well grounded, for the reason that neither under the Constitution nor the statute (section 22, Pol. Code) under which initiated laws may be voted upon is it required that the same shall receive more than a majority of all the votes cast upon the measure submitted.

The judgment and order appealed from are affirmed.