[S. F. No. 7713. In Bank.—February 2, 1916.]

EUGENE M. DON, Petitioner, v. HENRY A. PFISTER, etc.,
Respondent.

ELECTION LAW—PRIMARY ACT—STATEMENT OF PARTY AFFILIATION IN
AFFIDAVIT OF REGISTRATION.—Under the law as it now exists, not-
withstanding the amendment of section 1096 of the Political Code,
at the regular session of 1915, which strikes from the section the
provision that an elector may state in his affidavit of registration
the name of the political party with which he intends to affiliate
at the ensuing primary election, the elector is entitled to state that
fact in his affidavit.

ID.—"TEST AND CONDITION" FOR PARTICIPATION IN PRIMARY ELECTION—
CONSTITUTIONAL LAW.—The statement by the elector of the political

party organization with which he intends to affiliate, in his affidavit, is the "test and condition" upon which electors may participate in the ensuing primary election, and under section 2½ of article II of the constitution the legislature is empowered to prescribe such a test.

ID.—STATUTES—INCORPORATION BY REFERENCE—SUBSEQUENT REPEAL.— Section 1096 of the Political Code, so far as essential to the maintenance of the party primary provisions of the Primary Act was thus made a part of such act by incorporation by reference, and the legislature could not subsequently affect the Primary Act by merely amending section 1096 so as to eliminate party registration.

APPLICATION for a Writ of Mandate prayed for against Henry A. Pfister, etc.

The facts are stated in the opinion of the court.

Thomas V. Cator, for Petitioner.

Warren Olney, Jr., Cullinan & Hickey, Sullivan & Sullivan and Theo. J. Roche, for Respondent.

ANGELLOTTI, C. J.—In this matter a peremptory writ of mandate in accord with the alternative writ heretofore granted was ordered issued at the close of the oral argument; the views of the court being very briefly expressed from the bench. That the ground of the decision may be understood, it is proper to very briefly state it in writing.

The question presented was whether or not an elector is entitled to state in his affidavit of registration the name of the political party with which he intends to affiliate at the ensuing primary election, notwithstanding the amendment of section 1096 of the Political Code, at the regular legislative session of 1915, [Stats. 1915, p. 289], by striking from said section the provision that an elector may state this in such affidavit.

The question is one that must necessarily be decided in accord with the law as it now exists, entirely regardless of certain acts adopted at the recent extra session of the legislature, which, by virtue of the referendum provisions of our constitution, are not as yet effective, and which are still subject to be suspended until the next general election by the filing of a petition for a referendum thereon.

It is conceded by all that the partisan portion of the Primary Act of June 16, 1913, [Stats. 1913, p. 1379], as it now exists, a

valid subsisting law of the state, is practically rendered a
nullity, if the amendment of section 1096 in 1915 deprived
an elector of the right here sought to be exercised. No one
could qualify for a party primary as required by the Primary
Act, either to sign nominating petitions for candidates for
party nominations, or to vote at a party primary. The
Primary Act, from beginning to end, shows the absolute neces-
sity for party registration in order to make it a workable
system for party primaries at all, and learned counsel for
respondent frankly admitted that the expressed design of its
framers was that no one could participate in any of the party
primary elections provided for thereby unless in his affidavit
of registration he had stated the name of the political party
or organization with which he intended to affiliate. This was
the "test and condition" provided in the Primary Act upon
which electors might participate in such a party primary, and
that the legislature had the right to prescribe such a test in
the Primary Act itself cannot be doubted in view of the lan-
guage of section 2½, article II, of the constitution.

Under these circumstances, it is not surprising that the
framers of such Primary Act should substantially provide
therein, as they clearly had the right to do, and as we think
they have done, that electors should be allowed to register in
such a way as to make them eligible to participate in the
party primaries provided thereby. In our opinion they did
this, in a way not novel at all in legislation, by referring to
section 1096 of the Political Code, as it then stood, and
practically making it a part of the Primary Act. The lan-
guage is, "And all the provisions of section 1096 of the Polit-
ical Code, so far as they are consistent with the provisions
of this act, are hereby made applicable to primary elections
within the meaning of this act." They had done the same
thing in the Primary Act of 1911, [Stats. 1911, p. 769], and,
in a still earlier Primary Act, when section 1096 contained no
provision for statement of party affiliation, they had so ex-
pressly referred to section 1366a of the Political Code, which
contained such a provision. We are satisfied that it must be
held that it was the intent to make this section, as it then
stood, in so far at least as this matter so vital to the main-
tenance of the act is concerned, an integral part of the primary
law itself for so long as such primary law required the regis-
tration to show party affiliation. Conceding the power of the

legislature to legislate in this manner, i. e., by incorporating the provisions of some other statute by reference, as must be conceded, we have remaining simply the question of intent, and, as to that, we have already indicated our views. The case then is simply that presented in *People* v. *Whipple* (No. 2), 47 Cal. 592, where an act provided that township assessors shall have all the powers, and perform all the duties of county assessors prescribed by the provisions of the general Revenue Act of 1861, and wherein it was held that the subsequent repeal of the act so referred to did not operate to defeat or curtail the scope of the act in which the reference was contained, "*for the legal effect of such reference, in the first instance, is the same as though the act so referred to had been inserted therein in extenso.*" This is a principle well sustained by the authorities, and is applicable whenever the intent is apparent to make by reference another provision of law an actual part of the law under consideration. Section 1096, so far as essential to the maintenance of the party primary provisions of the Primary Act, was thus made an actual part of such act, and the legislature could not subsequently affect such Primary Act by simply amending said section 1096, so as to eliminate party registration.

As stated from the bench, the decision of the court was based on this ground, as to which all participating agreed, although other grounds were stated by some of the justices in addition.

It follows that petitioner is entitled to the relief sought, and accordingly a peremptory writ of mandate was ordered issued.

Sloss, J., concurred.

SHAW, J., Concurring.—I concur. I want to add to the opinion of the chief justice another ground on which I think the decision may rest. Section 1097 as amended in 1915 contains in subdivision 3 the same phrase that was contained in the section before its amendment, that "the affidavit of the party must show all the facts required to be stated." This means that if there is any fact required to be stated by any other law, the affidavit must state it, although such fact is not expressly mentioned in the form given in section 1097. And inasmuch as the primary law of 1913, in almost every section, implies that the registration shall show the party affiliation of

the voter, making it necessary to the operation of the primary law, I think the above-quoted phrase of the present section 1097 necessarily means, under the law as it now stands, that the registration affidavit must show the party affiliation.

HENSHAW, J., Concurring.—I concur in the foregoing. Viewed in the broadest and most liberal aspect it is imperative that the writ should issue. The constitution of this state (Const., art. II, sec. 2½) makes recognition of the existence of political parties, declares for a primary law, and empowers the legislature to prescribe tests controlling the right to vote at such primary. It is not necessary here to consider the full import of this constitutional provision, whether it is not in itself a guaranty of partisan primaries, through which alone under our system of laws political parties, the existence of which is certainly guaranteed by the constitution, can alone live. It is truly said that the intent of the legislature expressed in its acts is to be considered in interpreting those acts. No doubt can be entertained of the legislative intent in passing the primary law of 1913. It provided a complete plan for registration declaring party affiliations, though there was no compulsion upon the elector to declare such an affiliation. There was upon the statute books at that time a registration law authorizing the elector to declare his party affiliation, and compelling county clerks and registrars of voters to enter such declarations of party affiliation when made, to the very legitimate end that those and those only who belonged to a political party should, at the primary designed for the selection of its candidates, have a voice in that selection. There can be no doubt but that it made this registration law *as it then stood,* by distinct reference, a part of itself.

Equally no doubt can be entertained of the purpose of the legislature in passing the primary law of 1915. Compelled to recognize the existence of political parties, so far as national officers are concerned, it proposed to and did do away with all party nominations for state offices. It was designed, and avowedly designed, to destroy all political parties so far as they operated upon state officers and affairs. In the accomplishment of this purpose the Act of 1915 repealed the partisan primary law of 1913, and to harmonize legislation under its new proposed scheme of politics it struck out from section 1096 the provision touching the registration of the political

party with which the elector was affiliated. Turning again
to the intent of the legislature, there is no room for doubt but
that the law of 1915 was intended primarily and fundament-
ally to destroy party primaries and party nominations to state
and county offices.

Under the guaranty of the constitution the people of the
state under the initiative and the referendum become the high-
est legislative body in the state. Under the initiative they
may pass laws beyond the power of the legislature to modify
or repeal. Under the referendum they may perform the high
legislative function of vetoing an act of the legislature. We
are thus not only entitled, but it is our duty, to consider the
legislative intent of the people at a referendum election quite
as much as the legislative intent of the legislature itself. They
took under consideration the question as to whether or not
the primary law of 1915 should be permitted to remain upon
the statute books. If their vote at the polls favored it, it be-
came the law of the state. If their vote at the polls repudiated
it, their repudiation was a declaration that the primary law of
1915 should be repealed and the primary law of 1913 should
be restored to full life. Such was not only the intent, but
such was the necessary effect of the act of the sovereign people
at the polls in striking from the statute books the primary law
of 1915.

What then stands in the way of the officers of the state giv-
ing effect to this plainly expressed will of the people solemnly
registered at the polls? Nothing saving the specious argu-
ment that because the people in the same referendum election
did not veto the law of 1915 amending section 1096, it must be
concluded that they desired that law to stand as amended, and,
standing as amended, it will operate to subvert the whole parti-
san primary law of 1913, and thus undo everything which the
people of the state thought they were doing when in terms they
destroyed the primary law of 1915.

But what is the broad and complete answer to this argu-
ment? It is that the people plainly designed to restore to
full life the primary law of 1913; that to restore this act to
the statute books required partisan registration; that the pri-
mary law of 1913 makes specific reference to and adopts as
part of itself section 1096; but section 1096 as so adopted is
the section as it originally stood, calling for the registration
by party affiliation. Even if section 1096 had been totally re-

pealed it would, under familiar principles and under all of the authorities, be the subject of reference to determine what was meant by the primary law of 1913 and to give that meaning due effect; that, therefore, section 1096 for the purposes of the primary law of 1913, and for registration thereunder, would remain in force even though the section had been wholly eliminated from our statute books, and that such has always been the rule of construction. (*People* v. *Whipple*, 47 Cal. 591; Potter's Dwarris on Statutes, pp. 190, 192; *Regina* v. *Merionethshirs*, 6 Ad. & E. 343; *Rex* v. *Laxdale,* 1 Burr. 445; 2 Lewis' Sutherland on Statutory Construction 2d ed., secs. 405, 453, 489.)

Melvin, J., and Lennon, J., *pro tem.,* concurred.