No. 7103. April 28, 1943.)

GEORGE LUKER, Plaintiff, v. GEORGE H. CURTIS, as Secretary of State of the State of Idaho, Defendant.

[136 Pac. (2d) 978.]

Samuel Adelstein for plaintiff.

Hon. Bert H. Miller, attorney general, and Ariel L. Crowley, assistant attorney general, for defendant.

AILSHIE, J.—This is an original proceeding for a writ of prohibition, restraining defendant, as Secretary of State, from publishing in the session laws of the twenty-seventh

legislative session, H. B. No. 74, passed by the twenty-seventh legislative session, which act purports to repeal the "Senior Citizens' Grants Act", initiated by the people and approved and passed by vote of the people at the general election of November, 1942. An alternative writ issued, returnable March 15th. Answer by the defendant and briefs by the respective parties were filed; whereupon the matter was heard at the March Pocatello term, upon the return and answer to the alternative writ.

The answer of defendant goes both to the procedure adopted by plaintiff and the merits of the case. It is first contended that prohibition is not the proper remedy for raising the constitutional question involved; and secondly, that the legislature has power under the constitution to repeal an initiative act.

■ The conclusions we have reached, concerning the merits of the case, convince us of the public importance of a decision upon the constitutional question raised. Since the case has been fully briefed and argued on the merits, and in the light of its great public importance, it is thought that we should reserve our opinion on the question of technical procedure and pass upon the merits of the case at this time and set the question at rest. (*Toncray v. Budge,* 14 Ida. 621 at 645, 95 P. 26; *State Water Conservation Board v. Enking,* 56 Ida. 722, 726, 58 P. (2d) 779.)

Now, passing to the question as to the power of the legislature to repeal an initiative act adopted by popular vote, we must examine the provisions of the constitution, sec. 1, art. III, which provides as follows:

"Sec. 1. Legislative power—Enacting clause—Referendum—Initiative.—The legislative power of the state shall be vested in a senate and house of representatives. The enacting clause of every bill shall be as follows: 'Be it enacted by the Legislature of the State of Idaho.'

"The people reserve to themselves the power to approve or reject at the polls any act or measure passed by the legislature. This power is known as the referendum, and legal voters may, under such conditions and in such manner as may be provided by acts of the legislature, demand a referendum vote on any act or measure passed by the legislature and cause the same to be submitted to a vote of the people for their approval or rejection.

"*The people reserve to themselves the power to propose laws, and enact the same at the polls independent of the*

*legislature. This power is known as the initiative, and legal
voters may, under such conditions and in such manner as
may be provided by acts of the legislature, initiate any de-
sired legislation and cause the same to be submitted to the
vote of the people at a general election for their approval
or rejection provided that legislation thus submitted shall
require the approval of a number of voters equal to a ma-
jority of the aggregate vote cast for the office of governor
at such general election to be adopted."*

The italicized portion of the foregoing, being the initia-
tive clause, was adopted in 1912 (1913 Sess. Laws, Amend-
ment No. 16, p. 675). Acting under procedure prescribed
by the legislature (1933 Sess. Laws, chap. 210, p. 431),
the requisite number of electors initiated an act designated
and known as the "Senior Citizens' Grants Act", which was
submitted to and adopted by the voters at the November,
1942, election. The act was certified as passed and, by
the governor, declared in force November 23, 1942. The
legislature, which convened in January, 1943, by H. B. No.
74, repealed the "Senior Citizens' Grants Act".

In the first place, let it be noted, the initiative provision
of the constitution places no limitation whatever on the
power of *amendment or repeal* of an initiative act.

■ This power of legislation, reclaimed by the people
through the medium of the amendment to the constitution,
did not give any more force or effect to initiative legislation
than to legislative acts but placed them on an equal footing.
The power to thus legislate is derived from the same source
and, when exercised through one method of legislation, it
is asserted, is just as binding and efficient as if accomp-
lished by the other method; that the legislative will and
result is as validly consummated the one way as the other.

It is contended, however, that the legislature has no
power or authority to amend or repeal an *initiative act,*
for the alleged reason that an initiative act comes directly
from the people. That may very well be answered by the
fact, that the legislators, who convene on the first Monday
of January, following adoption of initiative measures, also
come direct from the people, having been elected at the
same time and by the same electors who adopted the initia-
tive measure. If the legislature repeals or amends an initia-
tive act, the people have at least two remedies, both of
which they may exercise at the same time, to redress their
grievance, if indeed they have a grievance, over the act of

the legislature: First, they may reenact the measure by another initiative and, second, at the same time and at the same election; may elect other members of the legislature who will, or may, better heed their wishes.

The enactment of law by the legislature takes a very different course from enactment by initiative. In the legislature, a bill must be introduced, printed, read on three several days; and the members thereby have an opportunity of debating the act and offering and making amendments, so that the law, if on a controversial subject, is ordinarily much discussed and analyzed. On the other hand, an initiative measure is drafted by a single person, or group of persons (*Wallace v. Zinman,* 200 Cal. 585, 254 P. 946, 62 A. L. R. 1341, 1345) and after circulated and filed, there is no opportunity for enactment or change until after it is voted upon. Indeed, the public, except the signers of the initiative petition, have no ready opportunity of seeing or reading an initiative measure until the Secretary of State mails copies out to the auditors of the several counties for distribution, preceding the general election. (1933 Sess. Laws, chap. 210, sec. 12, pp. 439-441; sec. 33-304, I. C. A.)

It may have been, and is, altogether probable, that the framers of the initiative amendment to the constitution had these considerations in mind, when they drafted the amendment, and therefore refrained from inserting any prohibition against the legislature amending an initiative act; but rather preferred to leave that entire legislative field of deliberation to the people and their chosen legislators. It is not unreasonable to infer, that the people themselves realized that emergencies might arise requiring amendment, alteration or repeal of initiative laws, as well as legislative acts, that could not, with safety to the public welfare, be deferred for two years or until the next general election. That, however, is a political question involving governmental authority and policy, over which the courts have no jurisdiction to consider or pass upon.

The people adopted a constitution which divides the powers of state government into three distinct branches (Const., art. II, sec. 1), the first and foremost of which is the legislative power (Const., art. III, sec. 1) "vested in a senate and house of representatives." Then, as an after-thought and by way of amendment (in 1912), they reclaimed certain specified powers, one of which was "the power to propose laws, and enact the same at the polls independent

of the legislature." This created an alternative method for passage of a law and, by the very terms of the reservation, the alternative method can only be exercised "under such conditions and in such manner as may be provided by acts of the legislature." The initiative and referendum provision of the amendment to the constitution lay dormant for more than twenty years until the legislature by chap. 210 of the 1933 session enacted the provisions of that chapter, prescribing the manner and method of exercising the initiative and referendum privileges. (*Johnson v. Diefendorf*, 56 Ida. 620, at 634-7, 57 P. (2d) 1068.)

So it can readily be seen that the people, in reclaiming and retaining the initiative legislative power, were nevertheless content to leave the *manner and conditions* of its exercise to their chosen senators and representatives; and in no form or manner limited the power of the legislature in time, manner or method of legislating on any subject upon which the lawmaking power can operate.

We are not without judicial authority concerning the adoption and operation of the principles of initiative legislation. The subject received attention by the people of Wisconsin and the court of that state as early as 1860. (*State ex rel Bank v. Hastings*, 12 Wis. 47, 52; *Van Steenwyck v. Sackett*, 17 Wis. 665, 675.) In that state the constitution of 1848 reserved to the people the right to legislate by initiative and referendum on the subject of *banks and banking*. (Secs. 4 and 5, art. XI, Wis. Const.) The same principle, as related to municipal government, was recognized in Indiana by the constitution of 1816. See *State ex rel Jameson v. Denny*, 118 Ind. 382, 21 N. E. 252, 4 L. R. A. 79, 83.

About half a century ago (in the '90s), a number of new theories of legislation and political policies came into vogue and resulted in the formation of various political and civic organizations, advancing new theories of popular government. It is generally considered, however, that the first *initiative and referendum amendment* to an American constitution (12 Encyc. Brit., p. 358) was adopted by the people of South Dakota in 1898. (Const., sec. 1, art. 3; *State ex rel Richards v. Whisman*, 36 S. D. 260, 154 N. W. 707, L. R. A. 1917B, 1.) That amendment, while differently phrased, was in substance and effect the same as the Idaho initiative and referendum amendment, supra. The scope and effect of the amendment came under review of the supreme

court of South Dakota in *State ex rel Richards v. Whisman*, supra; and the court, among other things, said:

"As we view this constitutional amendment, there is nothing therein contained which, either expressly or impliedly, in any degree, conflicts with, inhibits, limits, abridges, or prohibits any part of the legislative power originally granted to it to enact, amend, or repeal any law which it might have enacted before the adoption of this amendment. The fact that the people themselves may propose or enact laws in connection with the legislature in no manner conflicts with or prohibits the legislature from itself also enacting the same law that might be desired by the people. If the legislature of its own volition should enact the same law desired by the people, the initiative would then become unnecessary and useless as to such law. The evident purpose of this constitutional amendment was not to curtail or limit the powers of the legislature to enact laws, but the purpose was to compel enactment by the legislature of measures desired by the people, and, if the legislature neglected to act as so desired by the people, that then the people, by means of the initiative, might enact such measures into laws themselves. And, recognizing the right of the legislature to enact laws as it pleased, within all its constitutional powers, the referendum was designed as a check upon all legislative enactments not favored by the people. The only prohibition or inhibition or limitation in relation to legislative power appearing in the initiative portion of the amendment is that which relates to the veto power, and which reads: 'The veto power of the executive shall not be exercised as to measures referred to a vote of the people.'

"If the framers of this constitutional amendment had placed therein language something like the following: 'No legislature shall have power to repeal any initiative measure referred to a vote of the people,'—then the Constitution would have expressly prohibited the legislature from amending or repealing initiated laws; or, if they had placed something like this in the constitutional amendment: 'Initiated laws can be amended or repealed only by a vote of the people,'—then this constitutional amendment would, by necessary implication, have prohibited the legislature from repealing initiated laws. But no such limitation of the legislative power appears in such amendment or elsewhere in the Constitution. Appellants are, in effect, now asking

this court to read into the Constitution something that is not, either expressly or by implication, therein."

Soon after the South Dakota experiment was launched, and in 1902, the Oregon constitution was amended, (Art. 4, Sec. 1) reserving to the people the right to initiate and adopt legislation in substantially the same language and to the same effect as our amendment. The scope and purpose of the reservation by the people, of the power to initiate legislation, has been several times before the Oregon court and considered at great length. Soon after adoption of the amendment, and in 1903, the court, speaking through Mr. Justice Bean, gave the question a very thorough consideration and review, in *Kadderly v. City of Portland,* 44 Or. 118, 74 P. 710, 720, and, among other things, said:

"The people have simply reserved to themselves a larger share of legislative power, but they have not overthrown the republican form of the government, or substituted another in its place. The government is still divided into the legislative, executive, and judicial departments, the duties of which are discharged by representatives selected by the people. Under this amendment, it is true, the people may exercise a legislative power, and may, in effect, veto or defeat bills passed and approved by the legislature and the governor; but the legislative and executive departments are not destroyed, nor are their powers or authority materially curtailed. Laws proposed and enacted by the people under the initiative clause of the amendment are subject to the same constitutional limitations as other statutes, and may be amended or repealed by the legislature at will."

The Kadderly case has been uniformly approved and followed by the Oregon court: *Zilesch v. Polk County,* 107 Or. 659, 215 P. 578, 582; *Rose v. Port of Portland,* 83 Or. 541, 162 P. 498, 502; *Jory v. Martin,* 153 Or. 278, 56 P. (2d) 1093, 1102.

Oklahoma incorporated the initiative and referendum in its constitution at the time of its admission to the Union; and that provision is similar to and substantially the same as the Oregon initiative (Ex Parte Wagner, 21 Okla. 33, 95 P. 435, 18 Ann. Cas. 197). As recently as 1935, in the case of *Granger v. City of Tulsa,* 174 Okla. 565, 51 P. (2d) 567, 569, the Oklahoma court had occasion to consider the effect of the initiative provision of their constitution and said:

"There is no express provision in the State Constitution prohibiting the Legislature or a municipal legislative body from repealing or amending the measures initiated by the people of the state or the municipality, respectively . . . .

"Oregon's constitutional provisions relative to the initiative and referendum are similar to ours, as was stated in Ex parte Wagner, 21 Okl. 33, 95 P. 435, 18 Ann. Cas. 197, as follows: 'The initiative and referendum provisions, relating, not only to the affairs of the state, but also to counties and cities, are taken substantially from the Constitution of Oregon.'

"It has been definitely held by the Supreme Court of that state in *Kadderly v. Portland,* 44 Or. 118, 74 P. 710, 720, 75 P. 222, as follows: 'Laws proposed and enacted by the people under the initiative clause of the amendment are subject to the same constitutional limitations as other statutes, and may be amended or repealed by the Legislature at will.'

"In those jurisdictions where the Constitution does not specifically prohibit the Legislature from repealing initiated legislation, it is commonly held by the courts of such jurisdictions that acts so passed are subject to repeal by the Legislature in the same manner as other ordinary legislative measures are repealed. (*Kadderly v. Portland,* supra; *State ex rel. Halliburton v. Roach,* 230 Mo. 408, 130 S. W. 689, 139 Am. St. Rep. 639; In re Senate Resolution No. 4, 54 Colo. 262, 130 P. 333; *State ex rel v. Whisman,* 36 S. D. 260, 154 N. W. 707, L. R. A. 1917B, 1; *State ex rel. Evans v. Stewart,* 53 Mont. 18, 161 P. 309; *Baird v. Burke County,* 53 N. D. 140, 205 N. W. 17; *State ex rel. Singer v. Cartledge,* 129 Ohio St. 279, 195 N. E. 237, 97 A. L. R. 1040."

In the comparatively recent case of *State ex rel. Singer v. Cartledge,* supra, the Supreme Court of Ohio considered the question as to the power of a city council to amend or repeal an initiated ordinance. After reviewing a number of authorities and especially those from the Supreme Courts of Washington, Oregon, and West Virginia, the court said:

"Neither the Constitution of the state nor the state legislature has seen fit, as other states have done, to control or to curb councilmanic powers in respect to initiated legislation. An initiated law or ordinance of a non-chartered city, therefore, has no greater sanctity than legislation adopted by a city council.

"Counsel for the relators advance the very cogent argument that an initiated ordinance has little value if the council, within a short time thereafter, can alter or repeal it, and, furthermore, that, if the council should repeal it, a referendum could be forestalled by the council adopting an emergency clause. (*Shryock, a taxpayer, v. City of Zanesville,* 92 Ohio St. 375, 110 N. E. 937.) This argument is based on the conception not of power but of policy. However, it loses much of its potency when we consider that the Legislature has permitted municipalities to safeguard their initiated legislation by the adoption of a charter. (Sec. 4227-12, General Code.) Even without charters the electors, at recurring municipal elections, have the power of defeating councilmen who fail to listen to the vox populi as expressed in their initiated legislation. The vox populi that secured the initiated legislation of 1926 might prove to be a very weak voice in 1932, when the financial depression affected the people's pockets and denuded the city's funds. Evidently the city council so thought, else it might not have repealed the initiated ordinance."

(See also annotation following this decision, 97 A. L. R., pp. 1046-1053.)

In 1908 the Missouri constitution was amended, authorizing the initiative, and contains the following provision: "This section shall not be construed to deprive any member of the legislative assembly of the right to introduce any measure." (Mo. R. S. A. Const., art. 4, sec. 57.) In construing the foregoing, the court said: ". . . . if by the initiative a law was adopted by a vote of the people this would not prevent any member of the legislature from introducing a measure and having it passed, if he could secure the sufficient number of votes, to repeal such law and enact certain other measures in substitution for those repealed." (*State v. Roach,* 230 Mo. 408, 130 S. W. 689, 139 Am. St. Rep. 639; *State ex rel Drain v. Becker,* 240 S. W. 229, 232.)

In 1910 Colorado adopted substantially the same provision in relation to the initiative as was contained in the Missouri amendment (Const., Colo., art. 5, sec. 1); and the Colorado court held to the same effect as the Missouri court. In re Senate Resolution No. 4, 54 Colo. 262, 130 P. 333, 336.

North Dakota has a constitutional provision substantially the same as ours and, in *Baird v. Burke County,* 53 N. Dak. 140, 205 N. W. 17, 20, the court said:

"The state legislature therefore has full power of legislation except as limited by the federal or the state constitution. The initiative and the referendum neither add to nor subtract from that power; except as its scope is restricted by constitutional limitations, the power is still plenary in the legislature. Though the people have reserved legislative power, the representative character of· the government is fully retained."

The courts of both Kentucky and Washington have held that the legislative bodies of cities, operating under charters or legislative authority, *can not repeal an initiative* law or ordinance that has been adopted by vote of the people. (*Allen v. Hollingsworth*, 246 Ky. 812, 56 S. W. (2d) 530; *Stetson v. City of Seattle*, 74 Wash. 606, 134 P. 494; *State ex rel. Kenz v. City of Seattle*, 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905.) Those decisions, however, are predicated upon the theory and construction, that the respective legislative bodies are either expressly or impliedly prohibited repealing initiated laws. (See *Granger v. City of Tulsa*, supra.)

Plaintiff places great reliance on the case of *Don v. Pfister*, 172 Cal. 25, 155 P. 60. That case is not thought to be in point here, for the reason that it involved the enactment and repeal of a primary election law; and the decision seems to have been predicated on the *intent and purpose* of the legislators in the passage of a subsequent act. What is said in the concurring opinion in that case, with reference to the power of the people to "pass laws beyond the power of the legislature to modify or repeal," appears to be only dictum and not upon the real point on which the decision turned. It may well be further noted, that the people of California subsequently amended the constitution (Art. 4, Sec. 1) to provide, inter alia, as follows:

"No act, law or amendment to the constitution, initiated or adopted by the people, shall be subject to the veto power of the governor, and no act, law or amendment to the constitution, adopted by the people at the polls under the initiative provisions of this section, shall be amended or repealed except by a vote of the electors, unless otherwise provided in said initiative measure."

There is a wealth of cases that discuss the initiative and referendum as a means of legislation in both municipal and state law, but we do not deem it profitable to attempt a further or more extensive analysis of authorities here.

(See: *State ex rel. Goodman v. Stewart*, 57 Mont. 144, 187 P. 641; *Caine v. Robbins*, (Nev.) 131 P. (2d) 516, 520; *Willard v. Hubbs*, 30 Ariz. 417, 248 P. 32; *State ex rel. Gabbert v. MacQueen*, 82 W. Va. 44, 95 S. E. 666; *Bachmann v. Goodwin*, 121 (W. Va.) 303, 3 S. E. (2d) 532, 534; *Martin v. State High. Comm.*, 107 Mont. 603, 88 P. (2d) 41, 48; *Keigley v. Bench*, 97 Utah 69, 89 P. (2d) 480, 122 A. L. R. 756.)

The initiative principle of legislating has been attacked in the courts from time to time, on the theory that it was contrary to and destructive of a *representative* form of government and therefore in violation of the federal constitution. That contention was finally set at rest by the Supreme Court of the United States in *Pacific States Tel. & Tel. Co. v. Oregon*, 223 U. S. 118, 32 S. Ct. 224, 56 L. ed. 377, wherein the court, speaking through Chief Justice White, held that the manner, method and instrumentalities, through which the people of a state determine to *legislate,* are *political* (28 Am. Jur., 153) *and not judicial* questions; and that the courts can not consider the wisdom or unwisdom of the methods or instrumentalities by which the people of a state determine to accomplish legislation. (See *Johnson v. Diefendorf*, supra.)

"The authority of the legislature is limited only by the constitution itself, and it is axiomatic that any such body may alter, limit, or repeal, in whole or in part, any statute passed by a preceding one, unless there is some constitutional inhibition to the contrary."

*Higgins' Estate v. Hubbs*, 31 Ariz. 252, 252 P. 515, 519.

■ We conclude and hold that the legislature had the constitutional power to enact the repealing statute. We express no opinion as to the wisdom or unwisdom of the act.

Peremptory writ denied and proceeding dismissed.

Budge, Givens and Dunlap, JJ., concur.

HOLDEN, C.J., (Dissenting)—Whether the "Senior Citizens' Grants Act" was, or is, wise or unwise and whether, for instance, a pension of $20.00 per month is too little or a pension of $100.00 per month too much, are *social* questions, and not *judicial* questions; also whether the initiative principle of legislation as provided by Sec. 1, Art. III of our state constitution, was, or is, wise or unwise, is a *political* and not a *judicial* question. With the determination of such

questions this court has nothing whatsoever to do. So that the sole question presented to this court for determination is: Has the legislature power to repeal an initiative act adopted by popular vote under and pursuant to Sec. 1, Art. III of the constitution of the state of Idaho?

It is therein provided that: "The people reserve to themselves the power to propose laws, and enact the same at the polls *independent of the legislature.*" (Emphasis mine.) In other words, it is expressly provided, without any qualification or exception whatever, that all legislation initiated and enacted by the people, shall be "independent of the legislature." To hold, as the majority does, the legislature has power to repeal legislation enacted by the people under and pursuant to this provision of the constitution, at once makes such legislation absolutely *dependent* upon the will of the legislature, not *"independent* of the legislature," as our constitution so clearly provides. Not only can no hint be found giving the legislature power to repeal initiative legislation, but, on the contrary, the above quoted language of the constitution, expressly negatives any such power. Furthermore, if the legislature has the power to repeal, as the majority holds, then, it could repeal any and all legislation enacted by the people, as often as enacted, thus not only annulling this provision of the constitution, but at the same time rendering it useless, absurd and ridiculous.

It will be conceded, I am sure, the legislature has no power whatever to directly annul any provision of our constitution. Can the legislature, then, do *indirectly,* by repeal, what it cannot do *directly?* It is the universally recognized rule that a thing cannot be done *indirectly,* which cannot be done *directly.* Hence, the answer must be "no." But the legislature is, nevertheless, given the power by the majority of this court to *indirectly,* by repeal, wholly annul and destroy a clear, plain, express provision of our constitution granting the right to our citizens to initiate and enact legislation "independent of (not dependent upon) the legislature." The effect of the holding of the majority of this court is, of course, to render Sec. 1, of Art. III, supra, a mere worthless "scrap of paper."

But the majority say that if the legislature repeals an initiative act, "the people have at least two remedies, both of which they may exercise at the same time, to redress their grievance, if indeed they have a grievance, over the act of the legislature: First, they may re-enact the measure

by another initiative and, second, at the same time and at the same election, may elect other members of the legislature who will, or may, better heed their wishes."

The first above mentioned remedy would, of course, be worthless, in that, as above pointed out, the legislature could repeal initiative legislation as often as the people enacted it. As to the second remedy: The election of a majority to the legislature pledged to the enactment of a "Senior Citizens' Grants Act" would make the adoption of the act by the people wholly unnecessary. I submit the preservation of a provision of the constitution, complete and effective (not partial, ineffective and useless), so that the thing intended to be accomplished thereby can be fully and effectually accomplished, should not depend upon either the election or the views of a majority of the legislature.

For the reasons above stated, I dissent from the majority opinion.