CONNECTICUT SPORT ENTERPRISES, INC. *v.* FRANK J. VERRILLI, TOWN CLERK OF BRIDGEPORT
(two cases)

SUPERIOR COURT    FAIRFIELD COUNTY    FILE NOS. 152170, 152217
AT BRIDGEPORT

Memorandum filed February 11, 1974

*Harrigan & Hurwitz,* of Milford, for the plaintiff in each case.

*Richard F. Oburchay,* city attorney, appeared specially for the defendant in each case.

SADEN, J. The plaintiff seeks a temporary injunction against the defendant town clerk (the "municipal clerk" under General Statutes § 9-1a) in connection with a petition for a special election under Public Acts 1973, No. 73-600 to determine whether the plaintiff's application for a jai alai meeting under Public Acts 1973, No. 73-260 is approved by the electors of Bridgeport for a location at Nichols and Kossuth Streets. The plaintiff claims numerous defects in the petition forms, challenging the genuineness of signatures and the manner in which circulators obtained the signatures. Among other things, the plaintiff claims that the petition form on which the signatures were obtained does not comply with General Statutes § 7-9[1] which was

[1] "Sec. 7-9. PETITIONS FOR VOTE. FORM. STATEMENT BY CIRCULATOR. Whenever under the provisions of the general statutes or any special act, any action for a vote by the electors or voters of a municipality is to be initiated by the petition of such electors or voters, in addition to such other requirements as such statute or special act may impose, such petition shall be on a form prescribed or approved by the clerk of such municipality, and each page of such petition shall contain a statement, signed under penalties of false statement, by the person who circulated the same, setting forth such circulator's name and address, and stating that each person whose name appears on said page signed the same in person in the presence of such cir-

reenacted by the legislature as recently as 1971. Both the plaintiff and defendant have argued the applicability of § 7-9 and have requested a ruling from the court before presentation of evidence inasmuch as such a ruling, if adverse to the defendant, could shorten or eliminate the necessity for a full trial on the issues.

Public Acts 1973, No. 73-600, which provides for the special election in question, specifies the number of electors who must petition for a special election, the filing of the petition with the town clerk, and the time limits within which the election, or more accurately, the referendum, must be held.[2] Nothing more is mentioned about the form of the petition or the manner in which signatures shall be obtained.

Section 7-9, however, is a statute of broad application covering all general statutes and special acts

culator, that the circulator either knows each such signer or that the signer satisfactorily identified himself to the circulator and that all the signatures on said page were obtained not earlier than six months prior to the filing of said petition. Any page of a petition which does not contain such a statement by the circulator shall be invalid. Any circulator who makes a false statement in the statement hereinbefore provided shall be subject to the penalty provided for false statement."

[2] "[Public Act No. 73-600] AN ACT CONCERNING REFERENDA ON THE ESTABLISHMENT OF RACE TRACKS. . . . Section 1. . . . Within ten days after such [application] . . . has been filed, such town clerk shall cause notice of such filing to be published in a newspaper having a circulation in the town wherein the activity is to be conducted. If, within thirty days after such publication, a petition of not less than two hundred electors or five percent of the electors of such town, whichever is greater, is filed with the town clerk asking that the question of the approval of the conducting of such activity be submitted to the electors of such town at a special election called for the purpose to be held not less than thirty nor more than sixty days after the filing of such petition, in conformity with the provisions of section 9-369 of the 1971 noncumulative supplement to the general statutes, or at a regular town election if such election is to be held more than sixty but not more than one hundred twenty days after the filing of such petition, such question shall be so submitted and the vote shall be taken in the manner prescribed by said section 9-369. . . ." (General Statutes § 12-574a.)

where "any action for a vote by the electors . . . is to be initiated by the petition of such electors, . . . [and] in addition to such other requirements as such statute or special act may impose," it requires (1) the signature of the circulator with his name and address; (2) the circulator's statement that each person whose name appears on each page signed in that circulator's presence; (3) the circulator's statement that he either knows each such signer or that the signer satisfactorily identified himself to the circulator; and (4) the circulator's statement that all signatures on the page were obtained not earlier than six months prior to the filing of the petition. It further provides that any page without such a statement by the circulator "shall be invalid."

The petition form, in this case, as the parties agree, was prepared by the town clerk and printed by the city. Section 7-9 does not require the town clerk to print or to provide the petition forms. Its language is limited to "a form prescribed or approved by the [town] clerk," in contrast to such language as that of § 9-402 of the General Statutes (relating to petition forms for state or district offices), which requires the forms to "be prescribed and provided" by the secretary of state. The same is true of forms for petitions for municipal office, town committee members and delegates under § 9-410, except that these forms are prescribed by the secretary of state and provided by the registrar of voters. Both §§ 9-402 and 9-410 fix certain time limits within which signatures must be obtained. Section 9-453a (relating to a petition for nomination for elective office) requires each petition to be on a form "prescribed and provided" by the secretary of state. Section 9-453i requires submission of each page of the nominating petition to the town clerk at least nine weeks before election. Section 9-453j (relating, among other things, to the contents of a

statement as to the authenticity of signatures by the circulator) does not require a certification that they were signed within any specific time period.

We point out that the petitions referred to in §§ 9-402, 9-410, 9-453a, 9-453i, and 9-453j are not strictly analogous to the type of petition used to initiate a referendum of all electors in a municipality to which § 7-9 has application. Such non-referendum petitions serve a more limited purpose and do not, in the words of § 7-9, call "for a vote by the electors . . . of a municipality."

The petition form in this case begins by requesting submission of "the following question" to the electors as provided by law.[3] Then follows a statement, rather than a question in quotation marks, which might, upon quick reading by a signer, erroneously lead him to believe he is signing in favor of jai alai at the specified location, rather than requesting a referendum on the matter. The statement by the circulator printed at the bottom of the page contains all of the information required by § 7-9 except the statement that "all the signatures on said page were obtained not earlier than six months prior to the filing of said petition." The

[3]                              "PETITION
We, the undersigned electors of the City and Town of Bridgeport, pursuant to Public Act 73-600 of the 1973 Session of the General Assembly, hereby request that the following question be submitted to all the electors of Bridgeport at a special or regular election as the aforementioned law provides.

In favor of Connecticut Sport Enterprises, Inc. conducting the activities of jai alai on parcels of land located on Nichols and Kossuth Streets more particularly described in Schedule A, a copy of which is on file with the City and Town of Bridgeport.

| SIGNATURE OF REGISTERED ELECTOR | STREET ADDRESS |
| --- | --- |

plaintiff claims this is a fatal omission. The defendant claims this requirement should be considered directory rather than mandatory.

The petition form does not provide space for insertion of the date on which each signer signed his name and it contains no statement by the circulator as to when each signature was affixed or the time period within which all of the signatures on the page were affixed.

The defendant argues that § 7-171, dealing with referenda in towns on the question of adopting the local option statutes permitting bazaars and raffles, does not require the six months' time limit fixed by § 7-9. Section 7-171 does not state whether the petition shall be in any special form or whether it shall be provided by the municipal clerk, or approved by him, or prescribed by him. We need not inquire whether the defendant's contention is correct in light of the language of § 7-9 which seems to affix itself to every referendum question where "any action for a vote by the electors . . . is to be initiated by the petition of such electors, . . . in addition to such other requirements as such statute or special act may impose."

The defendant makes a very reasonable argument that the time requirements in Public Acts 1973, No. 73-600 between application and referendum are such as to make it absurd to require the six months' statement set forth in § 7-9. This may be so, except that however remote it may appear, it is conceivable that a circulator or a group of circulators, or their backers, could prepare forms far in advance of an anticipated application for jai alai, to be ready to force a referendum immediately upon the filing and advertising of the application. Thus the possibility of staleness in signatures might exist and yet the petition form might still be "approved" under the

language of § 7-9 if the six months' time limit is deleted or ruled directory. We have already pointed out that the town clerk is not obligated to print or provide the petition forms. He need only prescribe or approve the language. The word "prescribe" simply means "to lay down authoritatively as a guide, direction, or rule of action." Webster, Third New International Dictionary.

Our Supreme Court has said that the most elementary rule of statutory construction is that the intention of the legislature must govern as expressed in the statute. If the statute is clear, there is no room for construction. *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 207. A statute must be construed to give effect, if possible, to each clause, sentence or word inasmuch as nothing in the act should be construed as superfluous, void or insignificant. Id., 211.

The applicability of § 7-9 to the present petition seems difficult to deny. It was held applicable to a petition seeking a referendum on a bond issue under the Waterbury charter. *Waterbury Homeowners Assn., Inc.* v. *Waterbury,* 28 Conn. Sup. 295, 298. Furthermore, the language of § 7-9 is clear and unambiguous. This leaves open only the question whether the provision concerning the circulator's statement that all signatures were obtained not earlier than six months prior to the petition's date can be considered directory, as sought by the defendant, rather than mandatory.

We should perhaps keep in mind that the requirements set forth in § 7-9 are probably designed to import prima facie proof of the genuineness of the signatures on each page of the petition and that each signer is an elector. See 82 C.J.S., Statutes, § 123 (f). The six months' provision to assure lack of staleness in the signatures may or may not be a

wise or necessary provision, but the court is not concerned with legislative wisdom or the necessity for the language except as the statute expresses it. "We construe the Act as it is, and are not concerned in determining whether, if other provisions had been included, the Act would have been a better Act." *State ex rel. Lewis* v. *Turney,* 97 Conn. 496, 504.

Perhaps the six months' provision was originally designed to lend greater authenticity to the signatures because of the requirements existing in the law prior to the enactment of Public Acts 1973, No. 73-630 which prevented a person from becoming an elector unless he had resided in the town for at least six months. Public Acts 1973, No. 73-630 eliminated this requirement in favor of language which provides that an applicant, to become an elector, need only be a "bona fide resident of the town." But regardless of whether this is the reason for the six months' provision in § 7-9, the provision clearly is still there and was not deleted with the enactment of Public Acts 1973, No. 73-630.

The distinction between directory and mandatory provisions of a statute has been frequently set forth in our reports, and the latest expression of our Supreme Court is found in *State ex rel. Arcudi* v. *Iassogna,* 165 Conn. 203, 204: "We have had recent occasion to restate the general test which is to be applied in determining whether the provisions of a statute are mandatory and imperative, or merely directory. ' " '[T]he test most satisfactory and conclusive is, whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to matter material or immaterial—to matter of convenience or of substance.' . . . In the determination . . . as to whether or not a provision . . . is of the essence of the thing to be accomplished . . . significance is to be attached to

the nature of the act, . . . the language and form in which the provision is couched.". . .' In *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529, . . . we noted: 'Where the thing required to be done is one of substance the statutory provision is mandatory. . . . However, "[l]egislative provisions designed to secure order, system and dispatch in proceedings are ordinarily held to be directory where, as here, they are stated in affirmative terms or, to express it differently, are unaccompanied by negative words.". . .' "

The last sentence of the above quotation is expressly significant because it is determinative of the issue here. The court cannot give the language of § 7-9 relating to the contents of the circulator's statement which must be set forth on each page of the petition any interpretation except to render it mandatory rather than directory. This view is compelled by the sentence in § 7-9 immediately following the description of what must be included in the circulator's statement. It reads: "Any page of a petition which does not contain such a statement by the circulator shall be invalid." This sentence clearly invalidates each page of the petition which does not contain such a statement by the circulator; it does not merely prescribe what the contents of the statement must be, but adds that without such a statement each page shall be void. See *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529.

We point out that if any page of the petition contains the dates when each signer affixed his name within the proper time limit, the omission of the six months' clause in the circulator's statement might be construed as having been substantially complied with notwithstanding the lack of specific language in the statement that signatures had been obtained within six months. This is so because the

circulator's statement refers to the signatures as having been taken in his presence and hence a date within six months affixed to each signature by the signer would necessarily imply compliance with § 7-9. See *State ex rel. Lewis* v. *Turney,* 97 Conn. 496, 502; *Blocker* v. *Sewell,* 189 Ark. 924, 927.

The court therefore rules that § 7-9 applies to the present proceeding and each page of the petition must comply with its provisions.