# WATERBURY HOMEOWNERS ASSOCIATION, INC., ET AL. *v.* CITY OF WATERBURY ET AL.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 33376
AT WATERBURY

Memorandum filed May 15, 1969

*Ryszard S. Mrotek,* of New Britain, for the plaintiffs.

*Vincent P. Matasavage,* corporation counsel, and *John F. Phelan,* assistant corporation counsel, for the defendants.

MacDONALD, J. This case, submitted to the court on a stipulation of facts, originally was instituted by the plaintiff association, a nonstock corporate association of Waterbury homeowners and taxpayers (later joined by the individual plaintiff, Robert Cook, an elector of the city of Waterbury), in the form of an injunction action praying for a temporary and permanent injunction against the defendant city of Waterbury and the defendant Lawrence J. Zollo, as president of the board of aldermen of the city. Originally, it sought to restrain the defendants from proceeding with a $29 million bond issue for the financing of a new school complex until the bond issue is approved by a referendum vote, but after a show cause hearing at which the plaintiffs' motion for a temporary injunction was denied, a second count was added to the complaint and the prayer for relief was expanded to include a claim for a mandamus.

It has been stipulated that on December 2, 1968, the board of aldermen of the city of Waterbury, of which the defendant Zollo was president, met and voted to authorize a $29 million bond issue to finance

a new school complex, which proposed bond issue had been a subject of much public controversy for a long period of time; that the plaintiffs, committed to the position that a decision of such fiscal magnitude should be made only by the voters of the city through a referendum, procured 3200 signatures to a petition for a referendum; that this petition was duly filed with the city clerk on December 31, 1968; and that at least 2676 of the names and addresses thereon were those of eligible Waterbury voters. To summarize the balance of the stipulation of facts, the form of the petition was ruled invalid by Waterbury's corporation counsel on January 14, 1969, owing to claimed insufficient statements of the circulators of the petition; after a meeting of representatives of the plaintiff association with the board of aldermen, the board, on January 29, 1969, refused to order the referendum; and requests for sealed bids on the bonds are now ready for immediate publication by the city, such publication being held up pending determination of this action. The several legal questions raised will be hereinafter discussed and determined separately, although actually a determination of one or two of them would suffice to reach a decision in favor of the defendants.

I

The first and primary issue raised concerns the legality of the referendum petition circulated by the plaintiffs.

An examination of the petition itself indicates that it obviously does not comply with the requirements of § 7-9 of the General Statutes, which expressly provides as follows: "PETITIONS FOR VOTE. FORM. STATEMENT BY CIRCULATOR. Whenever under the provisions of the general statutes or any special act, any action for a vote by the electors or voters of a municipality is to be initiated by the petition of such

electors or voters, in addition to such other requirements as such statute or special act may impose, such petition shall be on a form prescribed or approved by the clerk of such municipality, and each page of such petition shall contain a statement, signed under penalties of perjury, by the person who circulated the same, setting forth such circulator's name and address, and stating that each person whose name appears on said page signed the same in person in the presence of such circulator, that the circulator either knows each such signer or that the signer satisfactorily identified himself to the circulator and that all the signatures on said page were obtained not earlier than six months prior to the filing of said petition. Any page of a petition which does not contain such a statement by the circulator shall be invalid. Any circulator who makes a false satement [sic] in the statement hereinbefore provided shall be subject to the penalty provided for in section 53-143."

Since it has been stipulated that no circulator's statement as required was affixed to each page of the petition, the plaintiffs have conceded, for all practical purposes, that it was not in legal form. They have argued that the requirements of § 7-9 do not apply to § 1501 of the city charter, which deals with appropriations and bond issues, on the ground that § 1501 is not a "Special Act," but there is no basis whatsoever for such a claim since the legislative history of § 1501 reveals that it originally was designated as 1931 Special Act No. 499, § 75, as amended by 1961 Special Act No. 333, § 1. 30 Spec. Laws 262. Such examination also reveals that § 1501 never was amended by the so-called home rule process, thus eliminating any claim that it is some type of home rule ordinance rather than a special act. See General Statutes, c. 99. The petition, as circulated, was invalid.

## II

The second issue is raised by plaintiffs' claim that the city is estopped by certain actions of the city clerk with respect to the petition from asserting its invalidity.

It appears from the stipulation of facts and an exhibit that the plaintiffs requested of the city clerk, orally on or about December 5, 1968, and by a letter prior to that date, forms of a petition for a referendum or his approval of a form submitted. The forms requested were not available, and the clerk did not approve or disapprove the form submitted by plaintiffs, which refusal or failure on his part to act is claimed by plaintiffs to violate the portion of § 7-9 which states that "such petition shall be on a form prescribed or approved by the clerk of such municipality." Without deciding whether the above language is "directory" rather than "mandatory," or whether there was actually noncompliance by the city clerk, this court has reached the conclusion that the defendants are not estopped from asserting their defense of the invalidity of the petition. A municipality cannot be estopped by unauthorized acts of its officers or agents. *Pallman* v. *East Haven,* 135 Conn. 593, 594; *State ex rel. LaVoie* v. *Building Commission,* 135 Conn. 415, 420. Estoppel may not be invoked against a municipality or its agents in matters involving a governmental function; *Wallingford* v. *Roberts,* 145 Conn. 682, 685, nor can it be invoked to compel a municipality or its officers to do an act expressly forbidden by law. *Heise* v. *Hartford,* 127 Conn. 359, 363.

It is unfortunate that the plaintiffs did not know that the form of petition used by them was illegal, but, after all, the familiar rule that ignorance of the law is no excuse is founded on public policy. See *Atlas Realty Corporation* v. *House,* 123 Conn. 94,

101.  Other decisions of our Connecticut courts which appear to support the position of the defendants on this issue include *Hebb* v. *Zoning Board of Appeals,* 150 Conn. 539, 542, 543, and *Newington* v. *Mazzoccoli,* 14 Conn. Sup. 459.

## III

The third issue raised, as to whether the board of aldermen, on its own motion and even in the face of an illegal petition, could lawfully order the referendum requested by plaintiffs, must be answered in the negative for the following reasons.

(a)  Where, as here, there is an express grant of power to the municipality by the legislature, that power, and only that power as expressly granted, can be exercised by the municipality, and if, for example, the charter points out a particular way in which any act is to be done, then, unless the prescribed forms are pursued the act is not lawful. *Bredice* v. *Norwalk,* 152 Conn. 287; *State ex rel. Southey* v. *Lashar,* 71 Conn. 540.  Where the action of the legislature has fixed the policy of the state, the city, by its council or board of aldermen, cannot proceed contrary thereto.  *Baker* v. *Norwalk,* 152 Conn. 312, 314, 315; *Teubner* v. *Waterbury,* 149 Conn. 524, 528; *Bailey* v. *Mars,* 138 Conn. 593.

(b)  Our Connecticut courts do not recognize the existence of general inherent powers of municipalities, which are limited to those expressly granted by the constitution, statutes and charter and those necessarily implied from such express powers.  See *Theurkauf* v. *Miller,* 153 Conn. 159; *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612; *Poulos* v. *Caparrelli,* 25 Conn. Sup. 370; *Fahy* v. *Trumbull,* 22 Conn. Sup. 105, 107; *Borough of Wallingford* v. *Town of Wallingford,* 15 Conn. Sup. 344, 347.  Since § 1501 of the charter prescribes the method for con-

ducting the bond referendum, any other method, under the foregoing authorities, would be proscribed and therefore inconsistent.

## IV

The plaintiffs have failed to show that they are entitled to the drastic remedy of a permanent injunction.

Regardless of the foregoing conclusions of law, the plaintiffs have not sustained their burden of proving irreparable harm and lack of adequate remedy at law. These requirements have been spelled out repeatedly by our Supreme Court. *Stocker* v. *Waterbury,* 154 Conn. 446, 449; *Nicholson* v. *Halfway House, Inc.,* 153 Conn. 507; *Theurkauf* v. *Miller,* 153 Conn. 159, 161. As stated in the recent case of *Wood* v. *Wilton,* 156 Conn. 304, 310, " 'Courts will act with extreme caution where the granting of injunctive relief will result in embarrassment to the operations of government.' " Applying such "extreme caution" to a careful study of the irreparable harm claimed in the original complaint, we find such phrases as "de facto disfranchisement" and "imminent increase in their tax burden."

To "disfranchise", according to Ballentine, Law Dictionary (2d Ed.), means "[t]o deprive a person of his citizenship, his franchise or his right of suffrage," and the right of suffrage has been defined as the right of a man "to vote for whom he pleases." *In re City Clerk of Paterson,* 88 A. 694, 695 (N.J.); *Independent Progressive Party* v. *County Clerks,* 31 Cal. 2d 549, 552. It is difficult to see how the term "disfranchisement" applies here, since the stipulation of facts makes it quite clear that what is involved is not an election but a referendum, which has been defined by our Supreme Court as simply a method of ascertaining the will of members of an

association or of a group of people. See *American Brass Co.* v. *Ansonia Brassworkers' Union,* 140 Conn. 457, 462.

The "increased tax burden" argument is an equally unimpressive claim of irreparable injury unsupported by the evidence. For example, "The Minutes of the Special Meeting of the Superintendent of Schools, Board of Education, Board of Aldermen and Board of Finance Held on July 17, 1968," show clearly the need for replacement of eleven elementary schools and two high schools, and the tabular comparison of the net cost of the educational park project (middle school) with the expansion of the existing school system makes it quite clear that the choice is not one of spending either the proposed $29 million or nothing. The choice is simply how the money is to be spent. The special bond report prepared by the department of budget control and audit, dated June 30, 1968, further weighs against the "tax burden" claim.

In another case involving the finances of the city of Waterbury, *Cassidy* v. *Jenks,* 14 Conn. Sup. 83, the court pointed out that where the harm, loss and inconvenience to the public would be greater than and disproportionate to the injury to one person or group of persons, the issuance of an injunction against the collection of a tax would constitute an unwarranted exercise of the injunctive remedy and of equitable powers and should be denied. If the logic of that statement is applied to the instant case, it is obvious that there are "unrepresented parties" involved here whose interests are vitally affected—notably the school children of the city of Waterbury. In fact, the very maintenance of the present action—which, in effect, blocks the full and complete implementation of the educational objectives outlined—by an organization whose purposes are set forth in the

high-sounding statements found in its certificate of incorporation and statement of objectives and goals raises serious doubts as to its standing in a court of equity. The plaintiffs are not entitled to injunctive relief.

## V

The plaintiffs have shown no legal basis for the issuance of a writ of mandamus.

A writ of mandamus as requested by the amended complaint will issue only to enforce a clear legal right where the one to whom it is addressed is under a clear legal obligation to perform the act to be commanded. *Boyko* v. *Weiss,* 147 Conn. 183, 186. It does not give or define rights not already established but merely commands the performance of a legal duty. *State ex rel. Comstock* v. *Hempstead,* 83 Conn. 554. The right must be clear and the petitioner must be without other adequate remedy. *State ex rel. Anderson* v. *Clark,* 15 Conn. Sup. 141, 144.

Here, neither the original complaint nor the amended complaint indicates the specific ministerial act which the plaintiffs seek to have performed. Only one member of the board of aldermen, Zollo, has been named as a defendant, and clearly he alone, even as president of the board, has no control over the issuance and sale of bonds. And even if the board of aldermen had the power to conduct a referendum, such a vote would be an act involving judgment and discretion on its part and not a mere ministerial act, so that a mandamus could not issue under such cases as *Sharkiewicz* v. *Smith,* 142 Conn. 410.

The court is satisfied, from the exhibits on file, that the board of finance and board of aldermen complied with the procedural requirements of § 1501

of the charter, and for any one of the reasons discussed above, and certainly for all of such reasons combined, judgment may enter in favor of the defendants.