38 P.3d 598

Kent RUDEEN, Power County Commissioner; Valerie Hoybjerg, Power County Commissioner; Ken Estep, Power County Commissioner; Douglas Glascok, Power County Assessor; Paul Laggis, Power County Prosecuting Attorney; Howard A. Sprague, Power County Sheriff; Bobbie J. Mauch, Power County Treasurer; Bud Kelly, Power County Coroner; John Cotant, Mayor of the City of Chubbuck; Jack Buell, Benewah County Commissioner; John Dyer, Boise County Commissioner; Robert S. Fort, Twin Falls County Clerk; Harley Hinshaw, Valley County Assessor; Brent R. Bunn, Bear Lake County Sheriff; Marilyn Frasier, Gem County Treasurer; Walt Femling, Blaine County Sheriff; Philip A. Brown, Gooding County Prosecuting Attorney; Duane Smith, Minidoka County Clerk; Kirk Hansen, Mayor of Soda Springs; Howard Allen, Twin Falls City Councilman; Armand Eckert, School Board Trustee, School District No. 412 Buhl; and Vern Newby, School Board Trustee, School District No. 271, Coeur d'Alene, each named individually and not in an official capacity, Plaintiffs–Respondents,

v.

Pete CENARRUSA, Secretary of State, Christine Steinlicht, Power County Clerk; Kay Sather, Benewah County Clerk; Rora A. Canody, Boise County Clerk; Susan Howard, Gem County Clerk; Leland G. Heinrich, Valley County Clerk; Joan P. Eborn, Bear Lake County Clerk; Marsha Reimann, Blaine County Clerk; Helen Edwards, Gooding County Clerk; Priscilla Bolton, Twin Falls County Deputy Clerk; Lola Clark, Minidoka County Deputy Clerk, Ron Conlin, Chubbuck City Clerk; Tausha Vorwaller, Soda Springs City Clerk; Sharon Bryan, Twin Falls Deputy City Clerk; Dr. Dan Nofziger, Clerk for School District No. 412 and Fran Bischof, Clerk for School District No. 271, each named in his or her official capacity and not as individuals, Defendants,

and

Citizens for Term Limits, Intervenor– Appellant,

and

Bruce Newcomb; Wayne Hurst; Robert L. Geddes; and Rhett M. Price, Invervenors–Respondents.

Kent Rudeen, Power County Commissioner; Valerie Hoybjerg, Power County Commissioner; Ken Estep, Power County Commissioner; Douglas Glascok, Power County Assessor; Paul Laggis, Power County Prosecuting Attorney; Howard A. Sprague, Power County Sheriff; Bobbie J. Mauch, Power County Treasurer; Bud Kelly, Power County Coroner; John Cotant, Mayor of the City of Chubbuck; Jack Buell, Benewah County Commissioner; John Dyer, Boise County Commissioner; Robert S. Fort, Twin Falls County Clerk; Harley Hinshaw, Valley County Assessor; Brent R. Bunn, Bear Lake County Sheriff; Marilyn Frasier, Gem County Treasurer; Walt Femling, Blaine County Sheriff; Philip A. Brown, Gooding County Prosecuting Attorney; Duane Smith, Minidoka County Clerk; Kirk Hansen, Mayor of Soda Springs; Howard Allen, Twin Falls City Councilman;

Armand Eckert, School Board Trustee, School District No. 412 Buhl; and Vern Newby, School Board Trustee, School District No. 271, Coeur d'Alene, each named individually and not in an official capacity, Plaintiffs–Respondents,

v.

Pete Cenarrusa, Secretary of State, Defendant–Appellant,

and

Christine Steinlicht, Power County Clerk; Kay Sather, Benewah County Clerk, Rora A. Canody, Boise County Clerk; Susan Howard, Gem County Clerk; Leland G. Heinrich, Valley County Clerk; Joan P. Eborn, Bear Lake County Clerk; Marsha Reimann, Blaine County Clerk; Helen Edwards, Gooding County Clerk; Priscilla Bolton, Twin Falls County Deputy Clerk; Lola Clark, Minidoka County Deputy Clerk; Ron Conlin, Chubbuck City Clerk; Tausha Vorwaller, Soda Springs City Clerk; Sharon Bryan, Twin Falls Deputy City Clerk; Dr. Dan Nofziger, Clerk for School District No. 412 and Fran Bischof, Clerk for School District No. 271, each named in his or her official capacity and not as individuals, Defendants.

Nos. 26975, 26976.

Supreme Court of Idaho, Boise, November 2001 Term.

Dec. 13, 2001.

Hon. Alan G. Lance, Attorney General, Boise, for appellant State of Idaho. James D. Carlson, Deputy Attorney General, argued.

Paine Hamblen, Coffin, Brooke & Miller, Coeur d'Alene; Stephen J. Safranek, Ann Arbor, Michigan, for intervenor-appellant Citizens For Term Limits. Stephen J. Safranek argued.

Jerry D. Mason, Coeur d'Alene; Scott W. Reed, Coeur d'Alene, for respondents Rudeen, et al., Scott W. Reed argued.

Dennis C. Colson, Moscow; Clements, Brown & McNichols, Lewiston, for intervenor-respondents Newcomb, et al., Dennis C. Colson argued.

TROUT, Chief Justice.

Appellants appeal the district court's order granting summary judgment in favor of Respondents Kent Rudeen, et al. (Rudeen), which found the Idaho Term Limits Act of 1994 unconstitutional. We reverse.

## I.

### FACTUAL AND PROCEDURAL HISTORY

An initiative establishing term limits for elected "federal, state, county, municipal and school district officials" (Term Limits Act) appeared on the ballot at the general election held in Idaho on November 8, 1994. The effect of the Term Limits Act is to prohibit the names of certain incumbents from appearing on the ballot. Fifty-nine percent of the votes cast favored the initiative, and on November 23, 1994, the Governor issued a proclamation declaring it to have been approved by the people. 1995 Idaho Sess. Laws 1371. The Term Limits Act added three new sections to the Idaho Code: I.C. §§ 34–907, 50–478, and 33–443. The Term Limits Act established that certain persons "shall not be eligible to have his or her name

placed upon the primary or general election ballot." The persons barred from having their names on the ballot were those who had served in the office for a given length of time.[1] The Act did not prohibit qualified voters from casting a write-in ballot for the candidate of their choice, nor did it prohibit any candidate from conducting a write-in campaign.

On January 24, 2000, a complaint was filed in the sixth judicial district by multiple county officials, mayors and school district trustees, naming Secretary of State Pete Cenarrusa and numerous county, city and school district clerks in their official capacities as defendants. As amended, the complaint sought to enjoin the application of the 1994 initiative and to declare Idaho Code §§ 34–907(e)(f), 33–443, and 50–478 to be in violation of the Idaho and U.S. Constitutions.

Rudeen filed a motion for preliminary injunction on February 22, 2000. On March 17, 2000, the district court issued its Memorandum Decision and Order granting injunctive relief only as to those incumbent county commissioner candidates who would otherwise be precluded from having their names placed on the ballot that year. Thereafter, Rudeen moved for summary judgment. On August 23, 2000, the district court issued a Memorandum Decision and Order granting Rudeen's motion for summary judgment, holding that Idaho Code §§ 34–907(e)(f), 33–443, and 50–478, impermissibly infringe upon the fundamental right of suffrage guaranteed by the Idaho Constitution.

On September 26, 2000, a petition for intervention was granted, allowing Bruce R. Newcomb, Robert L. Geddes, Wayne Hurst and Rhett M. Price (Newcomb) to intervene as respondents, extending this appeal to cover the constitutionality of the remaining provisions of the Term Limits Act, those provisions applicable to state legislators and state elected officials. On October 23, 2001 Ron G. Crane and James D. Williams were also permitted to intervene.

Defendant Secretary of State Pete T. Cenarrusa (the State) and Defendant Intervenor Citizens For Term Limits (CFTL) appealed the district court's order granting summary judgment. On October 18, 2001, Newcomb filed a motion for writ of prohibition. This Court issued an Order deferring the decision on the writ of prohibition until after oral argument.

## II.

### STANDARD OF REVIEW

■ Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court's standard of review of a district court's ruling on a motion for summary judgment is the same as that required of the district court when ruling on the motion. *Friel v. Boise City Housing Authority,* 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). If the evidence reveals no disputed issues of material fact, a question of law remains, over which this Court exercises free review. *Id.*

■ " 'It is fundamental that the judicial power to declare legislative action invalid upon constitutional grounds is to be exercised only in clear cases.' " *State ex rel. Brassey v. Hanson,* 81 Idaho 403, 406, 342 P.2d 706, 709 (1959) (citations omitted). " 'In the case of statutes passed by the Legislative Assembly and assailed as unconstitutional the question is not whether it is possible to condemn, but whether it is possible to uphold; and we stand committed to the rule that a statute will not be declared unconstitutional unless its nullity is placed, in our judgment, beyond reasonable doubt.' " *Hellar v. Cenarrusa,* 104 Idaho 858, 664 P.2d 765 (1983) (citations omitted). The same standard applies to initiatives passed by the people as to legislative actions, and the two

1. The length of time for the certain individuals consist of: State Legislators: eight or more of the previous fifteen years; County Commissioners: six or more of the previous eleven years; Mayor and certain City Council members: eight or more of the previous fifteen years; School District Trustees: six or more of the previous eleven years. I.C. § 34–907(c), (d), (e) and I.C. § 50–478(a), (b).

methods of enacting laws are placed on "equal footing." *See Westerberg v. Andrus,* 114 Idaho 401, 404, 757 P.2d 664, 667 (1988) (citing *Luker v. Curtis,* 64 Idaho 703, 136 P.2d 978 (1943)).

█ We are committed to the belief that it is not this Court's place to pass on the wisdom of the statutes in question, but rather, simply to make a legal determination whether they are unconstitutional. With this judicial canon in mind, we set forth the following.

## III.

### THE PROVISIONS DO NOT VIOLATE THE RIGHT OF SUFFRAGE

The Idaho Term Limits Act Initiative of 1994 added three new sections to the Idaho Code as follows:

§ 34–907. Limitation of ballot access for multi-term incumbents

(1) A person shall not be eligible to have his or her name placed upon the primary or general election ballot for a county, state or federal office which they have previously held if they have served, will serve or but for resignation would have served, in that same office by the end of the current term of office for a length of time as follows:

a. As a member of the U.S. House of Representatives representing any district within the state, during six (6) or more of the previous eleven (11) years.

b. As a member of the U.S. Senate, during twelve (12) or more of the previous twenty-three (23) years.

c. As a state elected official, during eight (8) or more of the previous fifteen (15) years.

d. As a state legislator, representing any district within the state, including all House seats within the same district, during eight (8) or more of the previous fifteen (15) years.

e. As a county commissioner, representing any district within the county, during six (6) or more of the previous eleven (11) years.

f. As any other county elected official, during eight (8) or more of the previous fifteen (15) years.

(2) Nothing in this section shall be construed as prohibiting any qualified voter of this state from casting a ballot in a general election for any person by writing the name of that person on any ballot, or as prohibiting such a properly marked general election ballot from being counted or tabulated, nor shall any provision of this section be construed as preventing or prohibiting any person from standing or campaigning for any elective office by means of a "write-in" campaign in a general election.

§ 50–478. Limitation of ballot access for multi-term incumbents

(1) A person shall not be eligible to have his or her name placed upon a special or general election ballot for a city office which they have previously held if they have served, will serve or but for resignation would have served, in that same office by the end of their current term of office for a length of time as follows:

a. As mayor during eight (8) or more of the previous fifteen (15) years.

b. As a member of city council representing any district or assigned member council seat during eight (8) or more of the previous fifteen (15) years.

(2) Nothing in this section shall be construed as prohibiting any qualified voter of the city from casting a ballot for any person by writing the name of that person on any ballot, or as prohibiting such a properly marked ballot from being counted or tabulated, nor shall any provision of this section be construed as preventing or prohibiting any person from standing or campaigning for any elective office by means of a "write-in" campaign.

§ 33–443. Limitation of ballot access for multi-term incumbents

(1) A person shall not be eligible to have his or her name placed upon the school election ballot for the office of school district trustee which they have previously held if they have served, will serve or but

for resignation would have served, in that same office by the end of their current term of office, representing any zone of the district, during six (6) or more of the previous eleven (11) years.

(2) Nothing in the section shall be construed as prohibiting any qualified voter of the school district from casting a ballot for any person by writing the name of that person on any ballot, or as prohibiting such a properly marked ballot from being counted or tabulated, nor shall any provision of this section be construed as preventing or prohibiting any person from standing or campaigning for any elective office by means of a "write-in" campaign.

## A. Suffrage Does Not Include Holding Office

■ The district court erred in holding that the statutes violated the Idaho Constitution because the court incorrectly found that the right of suffrage included the right to access the ballot and the right to hold public office.

Black's Law Dictionary defines suffrage as:

**Suffrage.** A vote; the act of voting; the right or privilege of casting a vote at public elections. The last is the meaning of the term in such phrases as "the extension of suffrage," "universal suffrage," etc. Right of "suffrage" is the right of a man to vote for whom he pleases. *Waterbury Homeowners Ass'n v. City of Waterbury*, 28 Conn.Supp. 295, 259 A.2d 650, 654. *See* Nineteenth Amendment.

Black's Law Dictionary, 6th Ed. West Publishing Co., 1990.

The district court in its Memorandum Decision and Order granting summary judgment discussed the original intent of the framers of the Idaho Constitution in determining that the right of suffrage included the right to access the ballot and the right to hold office. The district court placed emphasis on the fact that the framers of the Constitution chose to place § 20, which reads "to vote or hold office" directly after § 19, which is the suffrage guarantee, in coming to its conclusion. That, however, can cut either way, i.e. the fact that the framers did not use the words "hold office" in § 19, when they obviously had contemplated such, because they did use the words in § 20, could be read to indicate that holding office was not to be covered under § 19's right of suffrage.

Moreover, there is Idaho authority, dating to the time of the constitutional convention, indicating that the right of suffrage and the right to hold office are two separate acts. *See Wooley v. Watkins*, 2 Idaho 555, 562, 22 P. 102, 110 (Idaho Terr.1889). In 1889, the same year as the convention, the Supreme Court of the Idaho Territory noted that the qualifications of candidates and voters could be prescribed by the Territories, subject to the qualifications of sections 1851 and 1860 of the Revised Statutes of the United States that: "(1) The right of suffrage *and* of holding office shall be exercised only by citizens of the United States. . . ." *Id.* (emphasis added). There is also more recent Idaho authority indicating that the right of suffrage does not include the right to hold office, but simply the right to vote. *E.g. State v. Kelley*, 39 Idaho 668, 229 P. 659 (1924); *Van Valkenburgh v. Citizens for Term Limits*, 135 Idaho 121, 15 P.3d 1129 (2000) (using the terms "right to vote" and "right of suffrage" interchangeably).

A national search of the case law reveals no authority to interpret the meaning of the word suffrage so broadly as to include the right to hold office. There is Idaho case law indicating that the right of suffrage is broader than just the right to vote, but there is none holding, or even intimating, that the right to hold public office is included in the suffrage guarantee. *See American Independent Party in Idaho, Inc. v. Cenarrusa*, 92 Idaho 356, 358, 442 P.2d 766, 768 (1968). In *American Independent Party*, this Court wrote "[t]he right of citizens to organize and give expression and effect to their political aspirations through political parties is inherent in, and a part of, the right of suffrage." *Id.* (citations omitted). *American Independent Party*, however, was decided more from the perspective of the voters than the candidates, regarding the limitation on the right of suffrage. *See also Van Valkenburgh*, 135 Idaho at 126, 15 P.3d at 1134 (holding that a statute requiring that information about

whether or not candidates had pledged to only run for a limited number of terms in office be printed on the ballots was a violation of the voters' right of suffrage).

We hold that while the right of suffrage might be broader than simply the right to vote, it is not so broad that it encompasses the right to hold office.

## B. Article III, § 1 and Article VI, § 4 of the Idaho State Constitution

■ The statutes in question are also a valid exercise of the power vested in the legislature and the people by the Idaho Constitution. Article III, § 1 of the Idaho Constitution allows the people to pass laws by initiative. *See Westerberg v. Andrus*, 114 Idaho 401, 404, 757 P.2d 664, 667 (1988) (citing *Luker v. Curtis*, 64 Idaho 703, 136 P.2d 978 (1943)). Article VI, § 4 provides:

§ 4. LEGISLATURE MAY PRESCRIBE ADDITIONAL QUALIFICATIONS. The legislature may prescribe qualifications, limitations, and conditions for the right of suffrage, additional to those prescribed in this article, but shall never annul any of the provisions in this article contained.

ID. CONST. art. VI, § 4.

Rudeen asserts that Article VI, § 4 is a virtual nullity because it was only intended to keep people of the Mormon faith from holding office. They argue that the minutes of the constitutional convention of 1889 indicate that § 4 was written for that purpose, and it does not grant broad power for the legislature to impose limitations on qualified candidates; but rather is a limitation on such. Dennis C. Colson, *Idaho's Constitution: The Tie That Binds*, 149 (1991) ("The majority report wanted to empower the legislature so that Mormons could be forever disfranchised, regardless of changes in the church.").

■ If that were the intent, however, the section could have simply said so, which it does not. "[W]here the language of a statute is unambiguous, the clear expressed intent of the legislature must be given effect and there is no occasion for construction." *Corporation of Presiding Bishop v. Ada County*, 123 Idaho 410, 415, 849 P.2d 83, 88 (1993). The general rules of statutory construction apply to constitutional provisions as well as statutes. *See Sweeney v. Otter*, 119 Idaho 135, 138, 804 P.2d 308, 311 (1990) ("Where a statute or constitutional provision is clear we must follow the law as written. Where the language is unambiguous, there is no occasion for the application of the rules of construction."); *Westerberg v. Andrus*, 114 Idaho 401, 403, 757 P.2d 664, 666 (1988) ("Where the language of a statute is clear and unambiguous, legislative history and other extrinsic evidence should not be consulted. . . .").

Applying the foregoing rules of construction, Article III, § 1 and Article VI, § 4 provide the authority for the statutes in question. Article VI, § 4 specifically grants the authority to add limitations to the right of suffrage, provided none of the other provisions of Article VI, i.e., secret ballot of § 1, qualification of electors of § 2, disqualifications of electors and office holders of § 3, residence requirements of § 5, recall of officers of § 6, or nonpartisan selection of supreme court and district judges of § 7 are made a nullity. The provisions of the Term Limits Act do not annul any of these sections and based on the clear meaning of the language, they are a valid exercise of the power granted in Article VI, § 4.

Moreover, even if we were inclined to look beyond the plain meaning of the language, there is evidence that Article VI, § 4 was intended to grant the authority to limit the right of suffrage beyond the purpose asserted by Rudeen. This Court, in reference to the constitutional convention observed:

The debates in the convention were earnest and sometimes heated and a substitute was offered for [Article VI] section 4 limiting its operation to those persons and conditions specified in [Article VI] section 3.[2] The substitute was rejected by a vote of

---

2. Article VI, § 3 provides:

Section 3. Disqualification of certain persons. No person is permitted to vote, serve as a juror, or hold any civil office who has, at any

place, been convicted of a felony, and who has not been restored to the rights of citizenship, or who, at the time of such election, is con-

36 opposed and 16 in favor of its adoption; and thereupon the section as it now appears in the constitution was adopted by a vote of 42 ayes to 10 nays. *Reference to debates, (Idaho Const.Convention, vol. II, pp. 1030 to 1055) will disclose that it was understood by all members of the convention that sec. 4, art. 6, was intended to place in the hands of the legislature the power to add additional "qualifications, limitations, and conditions for the right of suffrage."*

*Fisher v. Masters,* 59 Idaho 366, 368–69, 83 P.2d 212, 215–16 (1938) (emphasis altered). *See also Proceedings and Debates of the Constitutional Convention of Idaho 1889,* Vol. I, pp. 931–938, 946, 950–77, 983–1018, Vol. II, pp. 1030–1051. The *Fisher* Court continued, " '[i]t sometimes happens that the voter's *first choice* is not a candidate for office, but that does not deprive him of doing the next best thing in *choosing among those who are candidates.*' " *Id.* at 369, 83 P.2d at 216 (quoting *Adams,* 18 Idaho at 509, 110 P. at 289) (emphasis in original). The Court thus concluded that a ballot restriction limiting the number of candidates for the office of district judge to double the number of positions to be filled in the upcoming election, and selecting the candidates to appear on the ballot based on the number of votes each candidate received in the primary election was not in violation of the candidates' or the voters' right of suffrage. *Id.* at 373, 83 P.2d at 220. *See also State v. Dunbar,* 39 Idaho 691, 230 P. 33 (1924) (stating that "[w]e must also bear in mind that our Legislature has been expressly invested with broad powers and wide discretion in the matter of legislating in regard to the exercise of the right of suffrage, by Const. art. 6, § 4," thus allowing legislature to forbid candidate from having his name on more than one ticket as the candidate of several parties for political office); *Adams v. Lansdon,* 18 Idaho 483, 110 P. 280 (1910) (allowing legislature to compel voter to vote for first and second choice for the same office, if there were more than twice as many candidates as offices to be filled); *Shepherd v. Grimmett,* 3 Idaho 403, 31 P. 793 (1892) (upholding Electors Test Oath statute, requiring elector to swear to a number of statements, including that he did not practice or teach plural marriage, or belong to an organization that did).

Based on the foregoing, we hold that the statutes in question do not violate the right of suffrage and that they are a valid exercise of the power vested in Article III, § 1 and Article VI, § 4 of the Idaho Constitution.

## IV.

### EQUAL PROTECTION

■ The Idaho Supreme Court, in reference to the right of suffrage and the right of equal protection has stated "Idaho's Constitution[3] stands on its own, and although we may look to the rulings of the federal courts on the United States [C]onstitution for guidance in interpreting our own state constitutional guarantees, we interpret a separate and in many respects independent constitution." *Hellar v. Cenarrusa,* 106 Idaho 586, 590, 682 P.2d 539, 543 (1984). The majority of Idaho cases, however, state that the equal protection guarantees of the federal and Idaho Constitutions are substantially equivalent. *E.g. Thompson v. Engelking,* 96 Idaho 793, 818, 537 P.2d 635, 660 (citing *State v. Cantrell,* 94 Idaho 653, 496 P.2d 276 (1972)); *Weller v. Hopper,* 85 Idaho 386, 379 P.2d 792 (1963). The *Thompson* Court, however, went on to write that "this is not to say it is

fined in prison on conviction of a criminal offense.

3. The equal protection provisions of the Idaho Constitution can be found in Article I, §§ 1 and 2:

§ 1. INALIENABLE RIGHTS OF MAN. All men are by nature free and equal, and have certain inalienable rights, among which are enjoying and defending life and liberty; acquiring, possessing and protecting property; pursuing happiness and securing safety.

§ 2. POLITICAL POWER INHERENT IN THE PEOPLE. All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same whenever they may deem it necessary; and no special privileges or immunities shall ever be granted that may not be altered, revoked, or repealed by the legislature.

equivalent in ultimate result." *Thompson,* 96 Idaho at 818, 537 P.2d at 660.

██ The framework for an equal protection and benefit analysis under both the federal and Idaho Constitutions generally involves a three-step process and has been articulated in *Tarbox v. Idaho Tax Commission,* 107 Idaho 957, 959, 961, 695 P.2d 342, 344, 346 (1984). ("[T]he differences between the standard applied under Idaho's equal protection clause and the federal clause are negligible; accordingly, we will not undertake a separate analysis...."). The first step is to identify the classification that is being challenged. *Id.* at 959, 695 P.2d at 344. The second step is to determine the standard under which the classification will be judicially reviewed. *Id.* The final step is to determine whether the appropriate standard has been satisfied. *Id.*

██ In the present action, the first step then under *Tarbox,* is to identify the classification being challenged, which are the candidates for elected offices that are precluded from having their names placed on the ballots. The second step is determining the standard of review. Under both the Idaho and federal equal protection provisions, if a suspect class or a fundamental right is involved, the statute is given strict scrutiny. *E.g. Maher v. Roe,* 432 U.S. 464, 470, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 484, 492 (1977); *State v. Mowrey,* 134 Idaho 751, 754–55, 9 P.3d 1217, 1220–21 (2000). If gender or illegitimacy is involved under the federal provision, intermediate scrutiny applies. *Id.* Idaho employs a "means focus" scrutiny, which is a similar standard to the federal intermediate scrutiny, but unlike the federal standard, it is employed " 'where the discriminatory character of a challenged statutory classification is apparent on its face and where there is also a patent indication of a lack of relationship between the classification and the declared purpose of the statute.' " *Mowrey,* 134 Idaho at 755, 9 P.3d at 1221 (citations omitted). "[T]he classification

must be 'obviously invidiously discriminatory' before the means-focus test will be used." *State v. Hart,* 135 Idaho 827, 830, 25 P.3d 850, 853 (2001). "In order for a classification to be considered obviously invidiously discriminatory, 'it must distinguish between individuals or groups either odiously or on some other basis calculated to excite animosity or ill will.' " *Id.* (citations omitted). All other challenges are given low level or rational basis review. *Mowrey,* 134 Idaho at 755, 9 P.3d at 1221.

██ Strict scrutiny requires the state to prove a compelling need for the goal of the challenged statute and that there is no less discriminatory method available to achieve that goal. *Id.* Low level review, conversely, places the burden on the challenging party to prove that the state's goal is not legitimate and that the challenged law is not rationally related to the legitimate government purpose and if there is any conceivable state of facts which will support it. *Mowrey,* 134 Idaho at 755, 9 P.3d at 1221 (citations omitted).

██ Regarding the federal claims, the United States Supreme Court has established a specific standard for reviewing the constitutionality of state statutes regulating elections, which seems to combine Fourteenth Amendment equal protection and substantive due process as well as First Amendment freedom of association claims into a single analysis. The proper standard to be applied to such challenges is the "flexible standard" [4] outlined in *Burdick v. Takushi,* 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). Under this flexible standard, courts:

> must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forth by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests

**4.** Although the "flexible standard" articulated by federal cases when dealing with election regulations varies slightly from other equal protection challenges, the test has vestiges of, and the result is similar to the more familiar three part test for an equal protection challenge outlined above. The "flexible standard" looks at "how severe"

the burden is, which takes into account the "character and magnitude" of the asserted injury (fundamental right involved) and whether the regulation is content neutral (suspect class involved) in determining whether to uphold the regulation in the face of a constitutional challenge.

make it necessary to burden the plaintiff's rights."

*Id.* at 434, 112 S.Ct. at 2063, 119 L.Ed.2d at 253 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547, 558 (1983)). The rigorousness of the test depends on the extent of the burden on the First and Fourteenth Amendment rights. Where the burden is severe, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434, 112 S.Ct. at 2063, 119 L.Ed.2d at 253 (citing *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 705, 116 L.Ed.2d 711, 723 (1992)). However, where the regulation imposes only a "reasonable, nondiscriminatory" restriction, the State's important regulatory interest will usually justify the restriction. *Burdick*, 504 U.S. at 434, 112 S.Ct. at 2063, 119 L.Ed.2d at 253. *See also League of Women Voters v. Diamond*, 965 F.Supp. 96 (1997) (finding that if restrictions are severe enough, such as being content based, the restrictions are subject to a strict scrutiny analysis, but when they are not severe such as being content neutral, they are subject to low level review).

The Ninth Circuit has recently had an opportunity to apply the foregoing test in a factually similar case to the instant case involving a California term limits initiative. *Bates v. Jones*, 131 F.3d 843, 847 (9th Cir. 1997), cert. denied, 523 U.S. 1021, 118 S.Ct. 1302, 140 L.Ed.2d 468 (1998). The *Bates* court *en banc* upheld "Proposition 140," an initiative by California voters amending that state's constitution imposing lifetime term limits for state legislators and various state officers.[5] The court applied low level scrutiny, finding that the impact of the term limits was "not severe," referring to the ability to run "for some other state office." *Id.* The court found that the "term limits do not constitute a discriminatory restriction ... [finding] no distinction on the basis of the content protected expression, party affiliation, or inherently arbitrary factors such as race, religion, or gender." *Id.* The court thus concluded that the mandatory term limits, which is actually more restrictive than

the statutes in the case at bar that allow for write-in candidates, was not in violation of the First or Fourteenth Amendments to the United States Constitution.

The facts of the present case are very similar to *Bates*, and we thus find that the statutes in dispute do not violate the candidates' federal equal protection rights. Moreover, under the Idaho Constitution as well as the federal constitution, the candidates are not members of a suspect class. In line with the vast majority of authority including the Ninth Circuit Court in *Bates*, we find that holding public office and being listed on a ballot is not a fundamental right. *E.g. id.; Wood v. Quinn*, 104 F.Supp.2d 611; *Bates v. Jones*, 131 F.3d at 847. Thus, strict scrutiny does not apply to the present challenge under the Idaho constitution's equal protection guarantee.

The challenged statutes are not discriminatory on their face and there is not a patent indication of a lack of relationship between the classification and the purpose of the statute. The statutes do not distinguish based upon classifications, but rather apply equally to all candidates based on the number of years served. They are not "obviously invidiously discriminatory" and they do not "distinguish between individuals or groups odiously or on some other basis calculated to excite animosity or ill will," which means the means focus test is not applicable. *Hart*, 135 Idaho at 830, 25 P.3d at 853. Thus, rational basis is the appropriate standard of review for the Idaho equal protection claim.

Considering the rational basis standard set forth above, we hold that the statutes do not violate the candidates' right of equal protection guaranteed by the Idaho Constitution. The statutes are rationally related by limiting access to the ballot by certain incumbents to the legitimate government goal of giving more individuals the opportunity to hold government offices than would be possible without the benefit of the ballot access restrictions.

---

**5.** California had been one of the few, if not the only state to hold that the right to hold public office, in addition to the right to vote was a

fundamental right. *E.g. Libertarian Party of California v. Eu*, 83 Cal.App.3d 470, 147 Cal.Rptr. 888 (1978).

## V.

### CONCLUSION

The district court's order granting summary judgment is reversed because we hold that the statutes in question do not violate the Idaho Constitution or the United States Constitution.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN concur.